## J. S. EMERY *v.* G. B. BRADFORD.

CASE AFFIRMED.—*Emery* v. *San Francisco Gas Company* affirmed.

EVIDENCE IN SUIT FOR STREET ASSESSMENT IN SAN FRANCISCO.—In an action by a contractor against the owner of a lot in San Francisco to recover the tax assessed on the same for work done on the street in front of the lot under a contract with the Superintendent of Public Streets, if the contract was fulfilled to the satisfaction of the Superintendent, the defendant cannot introduce evidence to prove that the work was not done according to the specifications of the contract nor in accordance with the ordinance.

THEORY OF THE LIABILITY FOR STREET ASSESSMENTS.—The lot owner is not held liable on the theory that there is a contract between him and the street contractor. The assessment is levied and collected by virtue of the sovereign power of taxation, and its validity depends upon the same general principles applicable to taxes proper levied for ordinary governmental purposes.

FULFILMENT OF STREET CONTRACT IN SAN FRANCISCO.—The remedy of an owner of a lot in San Francisco assessed for work on a street in front of the same, if dissatisfied with the decision of the Superintendent of Public Streets that the contractor has fulfilled his contract, is an appeal from such decision to the Board of Supervisors.

FULFILMENT OF CONTRACT OF STREET CONTRACTOR.—An error in determining whether a street contractor in San Francisco had fulfilled his contract is not a jurisdictional defect which vitiates an assessment levied on a lot to pay for the work specified in the contract.

PERSONAL JUDGMENT AGAINST OWNER OF LOT FOR ASSESSMENT.—The contractor is entitled to a lien on a lot in San Francisco and to a personal judgment against the owner for the amount of an assessment levied on the same for work done on the street in front of the same.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The Court rendered a personal judgment against the owner of the lot, but did not order a sale of the lot.

The other facts are stated in the opinion of the Court and dissenting opinion of Mr. Justice Currey.

*H. H. Haight*, for Appellant.

As one of the distinguishing attributes of sovereign power, it is never allowed but in cases clearly within the spirit of that constitutional provision which requires the just compensation to precede or accompany the taking of a citizen's property from him without his consent.  It has been held invariably that the law which provides for the taking must itself provide for the compensation; and that before the act of appropriation can be perfected, the compensation must be actually provided.

There are two or three principles to be deduced from the judicial expositions of the constitutional provision forbidding the taking private property for public use without just compensation: First—The compensation must be provided in the law and must precede or accompany the taking.  Second— The provision must be explicit and express, and not be left to doubtful inference or to any contingency.

The first principle has been so often decided that it has become a legal maxim.  The second principle is as clearly stated in *Curran* v. *Shattuck*, 24 Cal. 432, as in any reported case, and that is the last exposition of the rule.  The Court say that "the Board or officer must find the power to ascertain the compensation within the statute.  A resort cannot be had for that purpose to implication."  "If the statute has failed to provide the means or mode, it simply results that the compensation cannot be ascertained, and therefore the land cannot be taken for public use without the consent of the owner."  This is the precise point of objection to the Act of 1862.  It fails to make any provisions for apportioning and proportioning costs and benefits.

*Jabish Clement*, also for Appellant.

The appellant claimed the right of showing in the Court below that the work was not done in accordance with the contract, nor in accordance with the law; but his right to do so

was denied by the Court on the ground that he had waived it by failure to appeal to the Supervisors. For convenience of reference, we quote here the material part of the section of the statute relating to appeals :

" SEC. 12. All persons, whether named in the assessment or not, and all persons directly interested in any work provided for in this Act, or in the said assessment, feeling aggrieved by any of the acts or determinations aforesaid of the said Superintendent in relation thereto, or having or making any objection to the *correctness* or *legality* of the assessments, shall * * * appeal to the Board of Supervisors as provided in this section. * * * The said Board may *correct, alter,* or *modify* said assessment in such manner as to them shall seem just, and may instruct and direct the Superintendent to correct said warrant, assessment, or diagram in any particular, or to make and issue a new warrant, assessment, or diagram, to conform to the decision of the said Board in relation thereto, at their option. All the decisions of said Board upon notice and hearing as aforesaid, shall be final and conclusive * * as to all *errors* and *irregularities* which said Board *could have remedied and avoided.* The said warrant, assessment, and diagram, shall be held *prima facie* evidence of the *regularity* and *correctness* of the assessment and of the prior proceedings and acts of said Superintendent, and of the *regularity* of all the acts and proceedings of the Board of Supervisors, upon which said warrant, assessment and diagram are based." (Stats. 1862, p. 396.)

By a strange misapprehension of terms, this section has been relied on as cutting off all defense to a claim for street work, except by appeal to the Supervisors. The Superintendent of Streets is the assessor of property liable, or supposed to be liable, for street work. He ascertains the frontage of each individual property owner, the rate necessary to charge per front foot, and the amount of each property owner's liability. (Stats. 1862, p. 397, Sec. 9.)

On appeal, the Board of Supervisors sit as a Board of Equalization, to correct any errors committed by the Superintendent in measurement or calculation, and to do any other act with reference to the assessment, within the scope of their powers as a legislative or ministerial body, and not involving the performance of any judicial act. This is manifest from the fact that the Board only has power to *correct*, *alter*, or *modify* the assessment. It may not say on appeal that the contractor has failed in his contract, so that no liability accrued against the property owners. It may not set aside a warrant, except upon ordering a new and different one in its stead. Its decision is final " only as to all errors and irregularities which it could have remedied and avoided "—not as to any facts and circumstances concerning the contractor's right to the assessment. And the warrant, etc., are *prima facie* evidence of the regularity and correctness of the prior proceedings of the Superintendent and the Supervisors—not *conclusive* evidence of anything. The expression, *prima facie* evidence, limits their character as evidence and permits the introduction of rebutting testimony, even as to the regularity and correctness of the assessment.

To hold that the statute does require any person having cause to show why he is not liable on a street assessment, to go as appellant to the Supervisors rather than as defendant into Court, is to declare the statute unconstitutional; for the Legislature cannot constitutionally grant to the Supervisors the powers that such a statute would give them; nor can it deprive a citizen of the rights that such a statute would take from him.

The charge against the property owner is a debt arising out of contract.

The Courts of other States, in their struggles to uphold, against the plain letter of the Constitutions of those States, street assessment laws similar to, but not identical with our own, have found it extremely difficult to fix upon any sovereign right as a basis for their decisions. Some have held that the legislative authority came from the right of eminent

domain, and others have found what they deemed a sufficient warrant in the right of taxation. The late Supreme Court affirmed the authority of the Legislature to enact the law under consideration, by virtue of the taxing power. But our law differs from those passed upon in the cases from the reports of other States, which will be hereafter cited in the course of this argument, in this important particular: It expressly exempts the city and county from liability on the contract of the officers, and from all responsibility for the collection of the assessment, (Statutes of 1862, p. 394, Section 7;) while the laws relating to street improvements in other States impose upon the city authorities the duty of collecting the assessment and paying the contractor. We have not access to the various statutes, but the correctness of our statement will appear from the following cases: *People* v. *Mayor, etc., of Brooklyn*, 4 Comst. 419; *Sharp* v. *Spier*, 4 Hill, 76; *Mayor of New York* v. *Colgate*, 2 Kernan, 140; *Lake* v. *Trustees of Williamsburg*, 4 Denio 520–23; *Bonsall* v. *Mayor, etc., of Lebanon*, 19 Ohio, 418, 419.

That being the case, it is unimportant to inquire by what power the Legislature has enacted this law, for the authority, from whatever source it comes, is expended in constituting certain parties the agents of the citizen, with power to bind him and his property by contract. The Legislature does not ask of the citizen money with which to pay for street improvements; it simply requires him to do the work himself, or to employ, at his own expense, somebody else to do it; and for the better enforcement of the requirement, it has made the municipal authorities his agents in relation to the matter— special agents, with powers clearly limited and accurately defined. (*Lucas* v. *San Francisco*, 7 Cal. 470–474.)

According to the interpretation of this section that we are now combatting, the Legislature has said that the existence of all those concurrent facts and circumstances upon which depends the right of the plaintiff to recover in an action upon the contract must be ascertained or discovered by a tribunal which is not a Court, which could not under the Constitution

*determine* a controversy, which has no means of enforcing the attendance of witnesses, which cannot impannel a jury, which, in short, has no strictly judicial powers whatever—and that, too, without appeal to any Court. The controversy is to be *determined* by the Court, but the facts upon which the determination of the Court must be based are to be found by a legislative Board.

The statute, if it is to be construed as the respondent claims, is repugnant to several sections of the Constitution :

1. "The right of trial by jury shall be secured to all, "etc. —(Article I, Sec. 3.)

There is no trial by jury, and no occasion for one where there are no allegations to be disproved—where the facts are already conclusively determined; for the only province of a jury is to determine facts. (Mitchell, J., in *Weynheimer* v. *The People*, 3 Kernan, 458.)

2. "In any trial in any Court whatever, the party accused shall be allowed to appear and defend in person and with counsel, *as in civil actions.*"—(Article I, Sec. 8.)

"Of what value is this right to 'appear and defend,' if the Legislature can clog it with conditions and restrictions which substantially nullify the right? The Constitution says every person shall have a right ' to defend.' The Legislature says you may defend, provided you first admit yourself *prima facie* guilty." (Selden, J., in *Weynheimer* v. *The People*, 3 Kernan, 443.)

In this case the Legislature says the defendant may defend, provided he has first .procured the facts in dispute to be *conclusively determined* before a non-judicial tribunal.

3. "No persons * * * shall be deprived of life, liberty, or property, without due process of law."—(Article I, Sec. 8., next to the last clause.)

"Due process of law" includes not only a judicial trial by jury according to the course of the common law, but also a trial wherein the facts upon which the right in dispute depends, shall be ascertained according to the fundamental rules of evidence. (Selden, J., in *Weynheimer* v. *The People*, 3 Kern.

446, 447; Comstock, J., Id. 392–395; A. S. Johnson, J., Id. 416–418; Hubbard, J., Id. 454; *Taylor* v. *Porter*, 4 Hill, 147; *Guy* v. *Hermance*, 5 Cal. 74.)

*D. P. & A. Barstow*, for Respondent.

The contract on the part of Emery was to do the work under the direction and to the satisfaction of the Superintendent of Public Streets. It is not denied that the Superintendent was satisfied with the work; he knew as well as the defendant whether it was done according to contract. The defendant does not complain of any collusion between the Superintendent and the contractor.

Our view of this branch of the case is, that after the work has been done to the satisfaction of the Superintendent, and the time allowed for making objections has elapsed, the charge against the property owner becomes fixed, and his liability to pay is as inevitable as though backed by a judgment of a Court of last resort. The law vests in the Board of Supervisors exclusive jurisdiction of all matters relating to the care and preservation of the streets. There is no appeal from the decision of the Board in such matters. Ample protection is afforded the property owner; he has the right to do the work himself, though the Board may direct how it shall be done. But after he has refused to avail himself of that privilege, and the city employs another to do it for him, it seems that if the city is satisfied with the work, he has no right to complain; he might himself have done it, and prevented all cause of complaint; it is his refusal to perform a public duty which affords the occasion of complaint. (See *Sanford* v. *Mayor, etc., of New York*, 33 Barbour, 150.)

The counsel assumes that the liability of the property owner to pay for street repairs arises out of contract, and argues that the Board of Supervisors cannot pass upon the facts necessary to charge him, because it is not possessed of judicial powers; that he is entitled to a trial by jury before he can be properly charged.

11

Our answer is, that the obligation of a property owner to keep the street in front of his property in repair, is not a contract in any sense. The law compels him to do it, and he receives nothing in return. It is a tax upon him for which his land is liable, as in the case of other taxes. His refusal to act is followed by a penalty. The Board of Supervisors, in respect of street contracts, is like the Board of Equalization—its action is final and conclusive. No jury trial was ever thought of in connection with its duties.

By the Court, SAWYER, J.

This appeal is from the judgment and the order denying motion for a new trial in an action to recover a street assessment in San Francisco. The point upon the constitutionality of the law under which the assessment was made, and the first point upon the regularity of the proceedings relied on by appellant, have been recently decided adversely to him in the case of *Emery* v. *San Francisco Gas Company*, 28 Cal. 345. The principles settled in that case must control this.

*Evidence that a street contract was not performed according to the contract.*

The second point, in respect to the regularity of the proceedings, is, that the Court erred in excluding the evidence offered by defendant to prove " facts showing that the work was not done in accordance with the contract, nor in accordance with said ordinance." The plaintiff, by the express terms of his contract, was to do and perform " the work under the direction, and to the satisfaction of the Superintendent." The complaint avers that the plaintiff " commenced said work and prosecuted the same, under the direction, and to the satisfaction of said Superintendent," until said work was completed, etc., and that he "fulfilled said contract to the satisfaction of the said Superintendent." Annexed to the agreement are " specifications," stating the particulars of the work, which are referred to and made a part of the contract.

The answer contains a general affirmative "averment, on information and belief, that the work performed by the plaintiff, and for which said assessment is alleged to have been made, was not completed in accordance with the specifications of the contract, nor in accordance with section third of chapter fourth of the order of the Board of Supervisors in relation to streets and sidewalks." There is no complaint that the contract itself did not require the work to be done in conformity with the requirements of said section three, chapter four, of said order. The pleadings are verified, and the allegations of the complaint not specifically denied must, under the provisions of the Practice Act, be taken as admitted. There being no specific denial of the allegation on the point, it is admitted that the contract was performed " to the satisfaction of the Superintendent;" and this is according to the terms of the contract, and the law under which it was made. (Laws 1862, p. 394, Sec. 7.) The question is, whether the plaintiff is entitled to introduce evidence to prove that the work was not done according to " the specifications of the contract," notwithstanding the contract was fulfilled " to the satisfaction of the Superintendent."

The law makes the Superintendent of Public Streets, acting under the direction of, and in subordination to, the Board of Supervisors, the official agent of the city for the purpose of contracting for street improvements, and for directing the performance of the work, and determining whether or not it has been performed according to the terms of the contract. He is the agent of the city for approving and accepting the work, when performed, as well as for making the contract, and he acts under the sanction of his official responsibility. His acceptance of the work is, in contemplation of law, the acceptance of the city.

*The officers alone must determine whether the contract has been properly performed.*

The work—as we held in *Emery* v. *The San Francisco Gas Company*, 28 Cal. 345—is a public work, undertaken by and

on behalf of the public, and the public and not the adjoining property holder is, through the Superintendent, the contracting party. The public controls the street as well as the work. It is the public interest that is especially consulted. The municipal government through its officers determines what improvements shall be made, when and how, and with what materials they shall be constructed; and it is for the officers having these matters in charge to determine whether the work has been executed according to the plans adopted, and the contracts entered into, in pursuance of the orders of the local government. The lot holder, except as one of the public, is in no sense a party to the transaction. When the work is accomplished, for the purpose of defraying the expense, the municipal authorities levy an assessment upon the adjoining lands, by virtue of the sovereign right of taxation delegated by the Legislature of the State to the local government for that purpose, and collect it through the contractor himself. The owner of the adjoining lot has nothing to say about it, provided there is no fatal informality in the proceedings, except so far as his wishes are consulted in the first instance, as to whether or not the municipal authorities shall undertake the work, and so far as he is heard through his representative in the Board of Supervisors. The city makes no contract for him individually. The liability arises out of no agreement, express or implied, between him, in his individual character, and the street contractor. He simply pays because the burden has been imposed upon him in common with other citizens, and he cannot help himself, as he pays any other common public burden imposed under the sovereign power of taxation. He can only question the regularity of the proceeding resulting in the assessment, in the same manner, and upon the same principles, as the validity of a tax may be questioned. His liability is not a debt in any other sense than any other public burden imposed upon him under the same sovereign power is a debt. The only thing for the contractor to look to, is, to see that the proceedings are all regular. The prior proceedings being regular, and a valid contract having been made,

the law devolves upon the Superintendent the duty of supervising the work, and determining on behalf of the public whether the contract has been fulfilled, subject to review by the Supervisors on appeal ; and when those officers have determined that question, and no fraud has intervened, that is the end of the matter. The act of examining, approving and accepting the work requires the exercise of judgment and is, in that respect, of a judicial nature. (*Parks* v. *Boston*, 8 Pick. 225 ; *Miller* v. *Board Sup. Sacramento Co.*, 25 Cal. 97.) Yet these particular duties are not such as are usually devolved upon Courts of justice. Although they partake of a judicial nature, they are a part of those duties, in the aggregate of a mixed character, which are always imposed upon the executive and legislative officers of local governments. (*People* v. *El Dorado Co.*, 8 Cal. 61, 62 ; *Stone* v. *Elkins*, 24 Cal. 127.) If the proceedings are regular, so that the proper officers have jurisdiction to act, and they exercise their judgment upon the matters committed to their care in the several steps of the proceedings, their determinations are valid, and can only be reviewed in the mode appointed by law. In this class of cases the law requires the contract to provide that the work shall be done to the satisfaction of the Superintendent of Streets. It devolves upon that officer, in the first instance, the duty of determining whether the work has been performed in accordance with the contract. Although the public in its corporate capacity is the party to the contract, yet, the law is not unmindful of the subordinate interest of the lot holders upon whom the cost of the work is to be in part assessed ; and lest he should suffer from the errors of the Street Superintendent, sections four, nine and twelve authorize him to appeal to the Board of Supervisors, where he can specify his grievances in a petition, and " said petition or remonstrance shall be passed upon by the said Board of Supervisors, and their decision thereon shall be final and conclusive." (Laws 1862, p. 392.) An error of the Superintendent in the respect complained of can be corrected on appeal under sections four and nine, if not under section twelve. This conclu-

sive determination on appeal doubtless refers to those matters upon which the Superintendent is required in the discharge of his duties to exercise his judgment—those matters in which his errors are to be revised and corrected. There are acts to be performed of a jurisdictional character essential to the validity of any assessment. It is not to be supposed that the conclusiveness of the decision of the Board of Supervisors is to extend to that class of acts. The provisions in section twelve indicate the kind of errors upon which the decisions of the Board are to be final. It is that " all the decisions and determinations of said Board, upon notice and hearing aforesaid, shall be final and conclusive upon all persons entitled to an appeal under the provisions of this section, as to all errors and irregularities which said Board could have avoided."

Now this would not include jurisdictional acts, which it would be too late to remedy after the time for appeal had arrived. But an error in determining whether the contract has been in all respects performed is not one of the jurisdictional defects that could not be remedied. The power to direct the improvement of streets, and to make or authorize the making of contracts therefor, is properly vested in the Board of Supervisors, and it would seem to follow necessarily, that the authority to ultimately determine whether or not the contract has been fulfilled should be vested in the same body that has the power to order and make the contracts. We can see no valid objection to lodging this authority in that body, and, in the absence of fraud, making its determination final.

In this case, the contract is admitted by the pleadings to have been performed to the satisfaction of the Superintendent. It was a duty devolved upon that officer to determine that question of fact, and he did determine it. There is no fraud charged—nothing but an error in judgment. The law afforded the defendant a remedy in the regular course of the proceeding itself, by which he might have had the error reviewed, and the defect, if any, remedied. He did not avail himself of the remedy, but declined to appeal, and now seeks to review the determination of the Superintendent collaterally. We think,

by this neglect to appeal, he has acquiesced in the approval of the work by the Superintendent, and that his determination is conclusive.    The principles applicable to the review of assessments of other taxes would apply here, and such would be the result in respect to ordinary taxes for State, county and municipal purposes, (*Conlin* v. *Seamen*, 22 Cal. 549 ; *City of Peoria* v. *Kidder*, 26 Ill. 358 ; *Aldrich* v. *Cheshire R. R. Co.* 1 Foster, 361 ; *Hughes* v. *Kline*, 30 Pa. St. R. 230, 231 ; *Somaford* v. *Mayor of New York*, 33 Barb. 150 ; *City of Lowell* v. *Hadley*, 8 Met. 194 ; *Williams* v. *Holden*, 4 Wend. 227, 228 ; *Banton* v. *Neilson*, 3 John. 475, 476 ; *Windsor* v. *Field*, 1 Conn. 284.)

*Appeal to the Board of Supervisors from the decision of Superintendent.*

It is said, however, that by section twelve the "warrant, assessment and diagram" are only made "*prima facie* evidence of the regularity and correctness of the assessment," etc., and by these very terms it is implied that the *prima facie* case may be controverted by other evidence.    But this is not inconsistent with the idea that the decision of the proper officers is conclusive upon those matters which they are authorized to finally determine.    The warrant, etc., are *prima facie* evidence that everything necessary to a valid assessment has been done.    But certain jurisdictional acts may nevertheless be wanting—as for instance, no order for the improvement may have been made by the Board, and the contract might be wholly unauthorized.    Such defects could doubtless be shown, for they lay at the very foundation of a valid assessment, as there would be no jurisdiction without them.    But it is not sought to show the absence of any jurisdictional fact.    "After the contractor of any street work has fulfilled his contract to the satisfaction of the Superintendent, or Board of Supervisors on appeal, the Superintendent shall make an assessment to cover the sum due," etc.    (Sec 9.)    Now here the fact of the fulfilment of the contract to the satisfaction of the Superintendent, upon which his authority to make the assessment

depended, is admitted. It is not proposed by the evidence offered to controvert this fact, but only to show that this officer was too easily satisfied. But the law says, that the tribunal before which that showing must be made is the Board of Supervisors. No fraud is charged, and the proceedings all appear to be regular. By this construction, and by no other, the several provisions of the Act relating to the conclusiveness of the action of the Board, and the *prima facie* character of the " warrant, assessment and diagram " as evidence, can be harmonized, and all have effect. And it is a rule of construction that effect must, if possible, be given to every provision of a statute. We think the evidence was properly rejected.

The next point is substantially a re-statement in another form of the first, and requires no further notice.

*Personal judgment against a defendant on a street contract.*

The last point made, is, that the Court was not authorized by the statute to enter a personal judgment against the defendant. The contract was made under the Act of 1862. Sections ten and thirteen are cited, and an argument is based upon the language of those sections to show that the remedy of the contractor is limited to the enforcement of a lien upon the land charged with the assessment. But appellant entirely overlooks section seventeen, which in express terms provides that the owner shall also be personally liable. After stating who shall be deemed an owner within the meaning of the Act, it proceeds as follows : " And the person so defined to be the owner shall be personally liable for the payment of any charge or assessment lawfully made or assessed upon said lands, lots, or portion of lots, by said Superintendent, or contracted to be paid to the contractor for improvements, to cover the expenses of any work done under and authorized by the provisions of this Act." (Id. p. 400.) And section thirteen provides that, after a specified time, " the contractor or his assigns may sue, in his own name, the owner of the land, lots, or portion of lots assessed, on the day of the date of the recording of the warrant, assessment and diagrams, or

any day thereafter during the continuance of the lien of said assessment, and recover the amount of any assessment remaining due and unpaid," etc. (Id. 399.) There can be no doubt that the Legislature intended to authorize the entry of a personal judgment as well as to adjudge a lien upon the premises assessed and to order a sale.

Judgment affirmed.

CURREY, J., dissenting.

This action was brought to recover a certain sum of money alleged to be due the plaintiff from the defendant. In November, 1862, the plaintiff entered into a contract with the Superintendent of Public Streets and Highways of the City of San Francisco to perform certain work and labor and provide the material therefor in the improvement of that portion of Folsom street which is between First and Second streets, in said city. The defendant's property, which adjoins the locality, was assessed to pay a portion of the price to be paid the plaintiff for the work, which the Superintendent accepted as performed, in the fulfilment of the contract, as provided by the Act of the Legislature relating to the subject, passed on the 25th of April, 1862. (Laws 1862, p. 391.) By his answer the defendant, among other things, averred that the work performed by the plaintiff, and for which the assessment was alleged to have been made, was not completed in accordance with the specifications of the contract, nor in accordance with section third of chapter fourth of the order of the Board of Supervisors in relation to streets, defining the manner of constructing streets and sidewalks, and the character and description of materials to be used in their construction.

At the trial, which was before the Court without a jury, the plaintiff submitted his case upon the pleadings. The defendant, to maintain his defense, among other things, introduced in evidence section third of chapter fourth of the ordi-

nance referred to, and then produced three witnesses by whom he proposed to prove facts showing that the work was not done in accordance with the contract, nor in accordance with said ordinance. To this evidence the plaintiff objected on the ground that the same was inadmissible and incompetent, because the defense proposed to be proved could be made only by appeal to the Board of Supervisors, as provided in the Act of 1862. The Court sustained the objection, and the defendant excepted. The plaintiff obtained judgment and the defendant appealed.

There are several points presented by the appellant on which he seeks a reversal of the judgment. That relating to the competency of the evidence offered by him and excluded by the Court is the only one respecting which I deem it necessary to express an opinion.

The ninth section of the Act of 1862 provides that after the contractor of any street work has fulfilled his contract to the satisfaction of the Superintenpent or Board of Supervisors on appeal, the Superintendent shall make an assessment to cover the sum due for the work performed, and specified in the contract, in conformity with the provisions of the Act, or with the decision or directions of the Board on appeal. The next section provides that the assessment made shall be attached to a warrant, to which shall be annexed a diagram exhibiting the locality of the work done, signed by the Superintendent and countersigned by the Auditor of the city and county, authorizing the contractor or his assigns to demand and receive the sum assessed. The warrant, assessment and diagram are required to be recorded, and when recorded, the amount assessed is made a lien on the land assessed, which is to continue for two years, unless sooner discharged. The twelfth section of the Act gives to the owner of any land so assessed the right to appeal to the Board of Supervisors from these acts and determinations of the Superintendent, and the Board is authorized to correct, alter or modify the assessment, and to direct the Superintendent to correct the warrant, assessment or diagram in any particular, or to make and issue a

new warrant, assessment or diagram; and then it is declared
that all the decisions and determinations of the Board shall be
final and conclusive upon every person entitled to an appeal,
as to all errors and irregularities which the Board could have
remedied and avoided; and then it is further declared as fol-
lows: "The said warrant, assessment and diagram shall be
held *prima facie* evidence of the regularity and correctness of
the assessment and of the prior proceedings and acts of said
Superintendent, and of the regularity of all the acts and pro-
ceedings of the Board of Supervisors, upon which said war-
rant, assessment and diagram are based." The thirteenth sec-
tion of the Act authorizes the contractor to sue in his own
name the owner of the land assessed, at any time during the
continuance of the lien of the assessment thereon, and to
recover the amount of the assessment due and unpaid; and it
is provided that the warrant, assessment and diagram, with
affidavit of demand and non-payment, shall be *prima facie* evi-
dence of such indebtedness and of the right of the plaintiff to
recover in the action; and the Court in which such suit shall
be commenced is empowered to adjudge and decree a lien
against the premises assessed, and to order the same to be sold
on execution.

The theory upon which it is sought to justify the exclusion
of the evidence offered is, that the defendant had an oppor-
tunity, after the warrant was issued, to object by appeal to
the Board of Supervisors, to the work, and to the contractor's
right to collect the amount mentioned in the assessment, on
the ground of non-performance of the contract; and that if
upon such appeal it had appeared that the objection was well
taken, the warrant, assessment and diagram would have been
corrected by the Board, or suppressed, and new ones issued.
But this theory does not admit that the defendant could con-
trovert the plaintiff's right to recover anything whatever, nor
does the statute seem to contemplate any such contingency
as possible. The object of the statute, according to the con-
struction given to it by the Court below, was to charge the
defendant to the extent of the assessment affecting his prop-

erty with all the burdens of the contract on the one part, without the privilege of resisting payment *in toto* because the plaintiff had not performed the contract on his part, when by the general law such performance was a condition precedent to his right to recover anything. It is also argued on the part of the plaintiff that if the work was done to the satisfaction of the Superintendent, and the time for appealing to the Board of Supervisors from his determination had elapsed, that then-the charge against the owner of the premises became fixed, and his liability to pay the amount assessed was as absolute as if in judgment of a Court of last resort. There are several answers to this position, any one of which is sufficient for its refutation. The Act of 1862 does not give to the omission of the owner of premises assessed, to appeal to the Board of Supervisors such an · effect, but it provides that said warrant, assessment and diagram shall be held *prima facie* evidence of the regularity and correctness of the assessment and of the proceedings and acts of the Superintendent and of the Board of Supervisors, upon which the warrant, assessment, and diagram·are based ; and in an action brought by the contractor against the owner of the assessed property, the warrant, assessment and diagram, with the affidavit of demand and non-payment, shall be *prima facie* evidence of such indebtedness, and the right of the plaintiff to recover in the action. What is to be understood by *prima facie* evidence? It is that evidence which is sufficient' to establish the fact in issue in the first instance; which .fact remains established until rebutted or disproved; but as the term itself imports, this species of evidence is not conclusive—it may be disputed and overcome by countervailing evidence. This was the kind of evidence on which the plaintiff relied to establish his right to recover, and it was competent for the defendant to prove that it was not true.

It is claimed, as already seen, that the defendant was bound by the combined action of the Superintendent of Streets and Board of Supervisors as by a judgment of a Court of competent jurisdiction. If so, by what authority could these munici-

pal officers thus bind him? If it be said by authority of the statute, the answer to it is that there is a law higher than the statute. The Constitution of the State has provided in whom shall be reposed the judicial power, and the Board of Supervisors and Superintendent of Streets are not of these; besides which the Constitution provides that the right of trial by jury shall be secured to all, and remain inviolate forever, though this right may be waived by the parties in civil cases in the manner prescribed by law. But the Act of 1862 does not prescribe that this right may be waived, but provides in general terms that the contractor may have his action to recover the amount certified to be due him, and defines the evidence on which the plaintiff relied in the case as *prima facie* evidence of his right to recover. This statutory provision would have been idle and useless if to the acts and proceedings of the Superintendent of Streets and of the Board of Supervisors the consequences which are claimed for them were given. But the Act has not undertaken, in terms, to deprive the defendant of his right to be heard in his defense, in a Court of justice, proceeding under and in accordance with the Constitution; nor has it gone the length of giving to a contractor the right to recover against the owner of property supposed to be benefited by the improvement or work alleged to be done, the price specified by the contract, provided it can be shown by the defendant that the plaintiff has not rendered the consideration, on which his right to recover is made, by his contract under the law to depend.

My opinion is that the statute should be construed in support of the right of the citizen to a just defense for the preservation of his property; and believing that the ruling of the Court below, denying to the defendant the opportunity at the trial to make the defense which he proposed, was a denial of the constitutional right just in itself, I am constrained to dissent from the decision of a majorlty of this Court affirming the judgment.

RHODES, J., *dissenting.*

I am compelled to dissent from the opinion of my associates in this case, and will briefly state some of the grounds upon which I think the decision should be based.

The evidence offered by the defendant going to show a non-compliance by the contractor with the terms of the contract, was properly excluded, because the general allegation in the answer of non-performance of the contract, without any specication of the particulars wherein the failure consisted, did not entitle him to have the evidence admitted; but not because the performance " under the direction and to the satisfaction of the Superintendent " was conclusive upon the lot holders. The performance of the contract is the condition precedent to the making of the assessment and the issuing of the warrant, and although these may be made and issued upon a performance to the satisfaction of the Superintendent, yet when the assessment and diagram are made and the warrant issued, the law accords to them only the quality of being *prima facie* evidence of the regularity and correctness of the assessment and of the prior proceedings, etc. If they are conclusive evidence, it was idle to declare them *prima facie* evidence. It cannot with propriety be said that they constitute *prima facie* evidence only when jurisdictional acts and matters are drawn in question, for in the absence of any legislative declaration that those documents shall constitute only *prima facie* evidence, no conceivable number of those or similar documents could amount to more than *prima facie* evidence of the jurisdictional facts upon which depended the authority of the city to order the proposed work to be done.

If the conclusive effect claimed for them is justly due, it would seem that the Legislature had put the contractor to the useless trouble of procuring the judgment of a Court, that the sum specified in the assessment and warrant is due when the same papers are conclusive evidence—and a judgment is no more—that the sum specified therein is due to the contractor.

The personal judgment against the lot holder I do not think can be sustained upon any constitutional theory.   The seventeenth section of the Act of 1862, it is true, authorizes it; but in my opinion, the section is in conflict with some of the plainest constitutional provisions, that were designed for the protection of the citizen against the exercise of arbitrary and unrestricted power by the Government,  A charge that is nominally cast upon property, but which, at the same time, is made to constitute a charge upon the person, cannot be disguised under the name of an assessment, for it is essentially a tax in the larger sense of that term.   The cases treating of this matter, cited in *Emery* v. *San Francisco Gas Company*, hold an assessment, such as is mentioned in the thirty-seventh section of Article IV of the Constitution, providing for the organization of cities and towns, to be a charge imposed upon property to pay for certain works and improvements constructed in the immediate vicinity of such property, and which is supposed to receive some particular benefit over and above the general mass of property in the city by the construction of such improvements.  Where a personal liability for the payment of the assessment is superadded, the assessment becomes, in effect, a charge upon all the property of the person who owns the property on which the assessment is nominally charged, and this is thus transformed into a tax in the sense of that term as used in the clause of the Constitution providing " that taxation shall be equal and uniform throughout the State."   While working under the general system of taxation for State, county or city purposes, that provision controls and restrains every department of the Government— whether principal or subordinate—assuming to exercise the powers of taxation, and it cannot readily be conceived that a power so dangerous and peculiarly liable to abuse as that claimed for cities in levying assessments could have been granted to them.  Under the constitutional restriction just cited, in levying taxes for State, county or city purposes, the authorities are limited to a tax of one hundred per cent upon the value of the property subject to the tax, while the city in

levying and collecting the assessments. under the Act of 1862, according to the construction claimed, may exhaust the whole property charged with the assessment, and if the lot holder is so unfortunate as to own a lot adjacent to an expensive improvement, he may, instead of realizing the benefits presumed by the law to accrue to his property find himself a hopeless bankrupt. In my opinion, the plaintiff is only entitled to judgment enforcing the lien.