———o———

CITY OF ST. LOUIS to use of AUGUST SEIBERT, et al., Respondent, vs. THOMAS ALLEN, Appellant.

1. *Practice, civil—Trials—Verdict, general—Several counts—Arrest of judgment —Reversal.*—Where there are several causes of action stated in a petition, and a general verdict is rendered on the whole petition in favor of the plaintiff, if the lower Court refuse to arrest the judgment, this Court will reverse it.

2. *Corporations municipal—Streets, improvement of—Assessments—Personal judgments, validity of—Statutes authorizing.*—Personal judgments against the owner of property in a City, on account of assessments for improvements of streets &c., are null and void, and statutes authorizing such judgments are unconstitutional and void. [City of St. Louis vs. Clemens, 36 Mo., 467, and *Id.* 49 Mo., 552 overruled.]

3. *Practice, civil—Judgments—Interest—Assessments for street improvements in City of St. Louis.*—The 15 per cent. interest in suits on assessments for street improvements should be allowed to the time of the verdict, but the judgment rendered thereon should bear six per cent. interest.

*Appeal from St. Louis Circuit Court.*

*Dryden & Dryden,* for Appellant.

I. The Court erred in rendering a personal judgment against the defendant, instead of a judgment *in rem.*

The judgment ought always in these cases to be limited to the property condemned to pay the tax;—upon any other

theory it may be ruinous to own inferior property on a street to be improved.

II. The petition sets out several distinct causes of action, and the verdict for an entire and gross' sum cannot be sustained. (Brownell vs. Pacific R. R., 47 Mo., 239.)

III. If the bills were recoverable then the plaintiffs were entitled to recover interest thereon till judgment recovered at the rate of.15 per cent., but after the judgment the sum recovered under the statute would bear but 6 per cent. interest. (W. S., 783, §§ 2–3

*F. & L. Gottschalk*, for Respondents.

I. As to the power to render a personal judgment. (See Sess. Acts 1866, p. 295; 1867, p. 73, § 10; 1870, p. 451; 1871, p. 193; City of St. Louis vs. Clemens, 36 Mo., 467; City of St. Louis vs. De Noue, 44 Mo., 136; City of St. Louis vs. Armstrong, 38 Mo., 29; Inhabitants of Palmyra vs. Morton, 25 Mo., 593; Egyptian Levee Company vs. Hardin, 27 Mo., 495; City of St. Joseph vs. Anthony, 30 Mo., 538; Fowler vs. City of St. Joseph, 37 Mo., 239; Lockwood vs. City of St. Louis, 24 Mo., 20; Dillon vs. Munic. Corp., p. 617, n. and § 653, and notes § 660; Sheehan vs. Good Samaritan Hospital, 50 Mo., 155; Litchfield vs. McComber, 42 Barb., 288; Dallam vs. Oliver, 3 Gill., 445; Lafayette vs. Fowler, 34 Ind., 140; Taylor vs. Palmer, 31 Cal., 666.)

The City charter provides, that such tax bills shall bear interest at the rate of 15 per cent. if not paid within 6 months from their issue, and shall bear such interest " until paid " (Sess. Acts 1866, p. 296, § 11.)

VORIES, Judge, delivered the opinion of the court.

This action was brought by the respondents against the appellant in the Circuit Court of St. Louis County, to recover the amount of two several tax bills for work done by the respondents under a contract with the City of St. Louis, in curbing, guttering and macadamizing, done on what is called the Gravois road, in front of and adjoining certain lots of ground belonging to appellant, and upon which said lots said tax bill

were assessed as a special tax under the charter and ordinance of the City of St. Louis.

There were two counts in the petition, one on each of the two tax bills.

It was substantially charged in the 2d count of the petition that the appellant was the owner of a lot of ground lying and being in the City of St. Louis, to-wit: All that lot or parcel of ground, which is bounded East by Gravois road, North by line running from the point where the north line of Gravois road intersects the western line of Second Carondelet avenue westwardly to Jefferson avenue and parallel with said Allens south line, South by Allens south line, and West by Jefferson avenue, in blocks numbered 785-1343-1344 and 1345 of said city. That said city by authority of ordinance numbered 5777 & 5825 passed in pursuance of its charter, did contract with respondents to do certain curbing, guttering and macadamizing on Gravois road, in front of and adjoining the above described property of appellant, and did also by ordinance No. 5399, provide for the material, with which and the manner and general regulations in and under which said work was to be done; that in pursuance of said contract and ordinance said respondents did work and labor, and furnished materials, to the amount of seventeen hundred and thirty 96–100 dollars, the particulars of which will appear by the certified account filed. That after the work was completed said sum of $1,730.96–100 had been assessed as a special tax against said property by the said City of St. Louis, and that by virtue of an act of the General Assembly of the State entitled "An act supplementary to the several acts incorporating the City of St. Louis, approved January 16th 1860," and also by virtue of an act of said assembly entitled "An act to revise the City Charter of the City of St. Louis, approved March 19th, 1866, said respondent is made liable for the same, and that the Engineer of said city also by virtue of said recited acts has issued and delivered to respondents a certified bill of such assessment against said property in the name of appellant as the owner thereof, which said bill is herewith filed. By means

of all which the same became a lien against said property, in pursuance of the before recited acts. That said amount of $1,730.96–100, although demanded, remains unpaid and still due. Wherefore judgment is prayed for the amount of the tax bill with interest, &c., and that the lien against said lot be enforced, &c.

The other count of the petition is for another tax bill, and is assessed against the property, but in other respects very nearly similar to the one here set forth.

The answer of the defendant to the different counts of the petition were substantially the same. The answer denied, that Gravois road was a public highway, or that the ground on which the work was done, was or is part of the Gravois road or of any public highway, but that the said ground was at the time and still is, the real estate of the appellant, in no wise condemned to or otherwise dedicated to the public for the purpose of a public highway; that neither the city or respondent had any right to improve the same, or to charge the appellant or his property therewith. He denies that he, at the time of the doing of the work charged for, owned any such ground in city blocks numbered 1343-1344-1345 and 785, as is described in the petition. He denies that ordinance 5777 and 5825 were passed in pursuance of the charter of the city, or that it gave any authority to the city or its officers, to procure respondents to perform said work thereon, or that they in pursuance of the pretended contract, or of any valid contract, did work and labor or furnished material to the amount of $1,730-96–100 in front of, or adjoining the alleged property, or any property of respondent, or that the Engineer of said city ever computed the cost of the pretended work and assessed the same as a special tax against any adjoining property of appellant, or made out and delivered to respondents a certified bill of the same against said property for the amount against the same, as averred by respondents; or that said sum was demanded of appellant as alleged; or that said sum or any part thereof is a lien against the said property or any property of appellant, or that he became liable to pay the same.

To this answer a replication was filed denying, that said Gravois road was not a public highway, or that the city had no right to improve the same, and denied the affirmative allegations in the answer.

A trial was had on the issue made in said Circuit Court in June, 1871, at Special Term.

The cause, after being heard, was submitted to a jury, who found for the plaintiff. The entry on the record being as follows:

"Now at this day come again said parties by their respective attorneys, and the jury sworn and impanneled herein also come, and the trial of this cause progressed, and being concluded, the jurors aforesaid upon their oaths aforesaid find the issue joined in favor of said plaintiffs, and assess their damages at the sum of five thousand five hundred and fifty-six dollars and twenty-seven cents."

Judgment is then rendered by the court for the amount found by the jury, which said amount it is provided shall be enforced as a lien against all of the property named in both counts of the petition, thereby making the amount named in each tax bill, not only a lien on the land against which it is assessed, but also against the land named in the other account or tax bill.

After the rendition of this judgment, the defendant filed his several motions for a new trial, and in arrest of the judgment. In the defendant's motion for a new trial, it is set out as a cause for a new trial, amongst other causes, that the verdict of the jury is against the law, and against the weight of the evidence.

It is set out as cause for arresting the judgment, amongst other things, that "the verdict of the jury is not responsive to the issues. That the petition contains two distinct counts, in which distinct property is sought to be charged by the demands stated in said counts respectively, and yet the verdict is joint and the judgment is joint, charging the whole or joint demand on each several piece of said property."

During the pendency of these motions, the plaintiffs and respondents here appeared in court, and remitted and released

so much of said judgment, as attempted to enforce a lien against the property therein named, and as described in the petition; whereupon the court rendered a general judgment against the defendants for the amount named in the verdict, and ordered execution to issue thereon, after which the court overruled defendant's motions for a new trial and in arrest of the judgment. To the opinions of the court in overruling said several motions for a new trial, and in arrest of the judgment, the defendant at the time excepted. The cause was then appealed to the General Term of the Circuit Court of St. Louis County, where the said judgment so rendered by the Special Term of said court was affirmed, and the defendant has appealed to this court.

With the views that I have taken of this case, it will only be necessary to examine two questions growing out of the record in this case: 1st Was it proper for the court below to render a judgment upon the general verdict found by the jury upon the whole petition, without finding separately on each count in the petition; 2d Was the court authorized to render a general personal judgment against defendant upon the tax bills sued on and described in the petition?

In reference to the first question above stated the rule is, that where the separate counts of the petition each state a separate, different, and distinct cause of action, a general verdict on the whole petition is insufficient, and the damages should be assessed separately on each cause of action, as stated in the several counts; but if the counts are substantially for the same cause of action, so that a recovery on any one of them would be a recovery on the other, and where a recovery on the cause stated in one count would be a bar to any recovery stated in the other count, then a general verdict will be sufficient. (Brownell vs. the Pacific R. R. Co., 47 Mo. 139; Mooney vs. Kennett, 19 Mo., 551.)

In the case of Pitts vs. Fugate, 41 Mo., 405, it is expressly held, that where there are several causes of action stated in the petition, and a general verdict rendered on the whole petition in favor of the plaintiff, the judgment should be arrest-

4—VOL. LIII.

ed, and if the court below refuse to arrest the judgment, it will be reversed. The case of the State *ex rel.*, Collins vs Dulle, *et al.*, 45 Mo., 269, is to the same effect.

The case now being considered comes peculiarly within the rules stated in the above cited cases. Here there are two counts, they are founded on two separate, distinct causes of action, and each cause of action is alleged to be a lien on a distinct and separate lot or parcel of land; hence no intelligent judgment could be rendered by the court on the verdict found by the jury. The judgment must for that cause alone be reversed.

It may seem useless to examine the other question above stated, but as it has been earnestly and ably argued, and as the case must be sent back for a re-trial, it may be useful also to pass upon that question.

It is contended by the respondent, that this question has been directly settled by this court by various decisions heretofore rendered, and that said question has also been settled by the adjudged cases in other States. Several cases are referred to, where personal judgments have been rendered upon assessments, which are contended to be identical in their legal effect with the ones sued on in this case.

In the case of the City of St. Louis to the use of McGrath vs. Clemens, 36 Mo., 467, it is certainly held by the court, that a personal judgment is proper in a case like the one under consideration; but the point made in that case was not whether the Legislature had the constitutional power to authorize a municipal corporation to make local improvements in their territorial limits, and charge the cost thereof to the adjoining lots or land, and make the owners of such land or lots *personally* liable to pay for said improvements, on account of any supposed benefit that the improvements might be to the property, and then by a general personal judgment against the owner of the lot sell not only the lot or lands against which the assessment was made, and which was supposed to be benefited, but also any other property of the owner to pay the judgment; but the point raised and decided

in that case was, whether under the state of the pleadings in that case a general personal judgment could be rendered, or whether, by the language of the statute and ordinances under which the work was done, a personal judgment could be rendered against the owner of the lots charged with the assessment. The constitutional power to authorize the rendition of a personal judgment in such case was not considered or argued, and the same may be said as to the cases of the City of St. Louis to the use of Lohrum vs. Coons, 37 Mo., 44; Fowler vs. City of St. Joseph, 37 Mo., 228; and The Inhabitants of Palmyra vs. Morton, 25 Mo., 593. In none of these cases, nor in any other case in this State to which we have been referred, was the constitutional power of the Legislature to authorize municipal corporations to make these local improvements, and assess the cost against the adjoining property, and then recover a personal judgment against the owner of the property for the amount assessed, ever brought directly in question or discussed. In reference to the adjudged cases on this subject in other States it may be remarked, that the Constitutions of most of such States contain provisions on the subject of taxations and assessments not to be found in our Constitution. By the Constitution of Ohio it is provided, that " Laws shall be passed, taxing by a uniform rule all moneys, &c., and also all real and personal property according to its true value in money." It is also provided, that the General Assembly is required to " provide for the organization of cities and incorporated villages by general laws, and to restrict their power of taxation, *assessments*, borrowing money, contracting debts, and loaning their credit, so as to prevent the abuse of such power." In the case of Hill vs. Higdon, 5 Ohio State, 243, it is held by the Supreme Court of Ohio, that the first clause of the Constitution above referred to, furnishes the governing principle for all laws levying taxes for general revenue purposes, whether for State, county, township, or corporation purposes, and that it " requires a uniform rate per cent. to be levied upon all property, according to its true value in money." It is further held, that no law could have

been passed by the Legislature under that clause of the Constitution authorizing the cost of local improvements to be assessed against the adjoining property, but that resort must be had to the last named clause of the Constitution above set forth for any such purpose. The learned Judge delivering the opinion of the court, makes a distinction between the words taxation as used in said clause and the word *assessment* as used in the same clause; the one, it is said, refers to taxation for general purposes, while the other refers to assessments made for local purposes upon property in the vicinity of the improvement made and supposed to be benefited thereby; that it is under this last clause and that only, that the Legislature gets powers to pass laws authorizing these local improvements and assessments.

Our Constitution has no provision relating to assessments by cities and incorporated towns, but simply provides, " that all property subject to taxation ought to be taxed in proportion to its value." If the power of municipal corporations to make these local improvements and make special assessments against the adjoining property for the cost thereof, in proportion to the front foot or otherwise, was a new question in this State, it might be difficult to find any sufficient warrant in our Constitution to justify such assessments or taxation, but this method of taxation has been recognized and acted on too long to now be questioned, but it is certainly the duty of the courts to see that its exercise is kept within proper limit.

The Constitution of California, so far as it relates to taxation, is substantially the same as that of Ohio. In the case of Taylor vs. Palmer, 31 Cal., 240, these constitutional provisions are discussed and construed, and in that case it is held, that the words " taxation" and " assessments," as used in the Constitution, do not have the same meaning; that the power of taxation is a power which the Legislature takes from the laws of its creation, to impose taxes upon the property of the citizens for the support of the Goverment, and that this tax must under the Constitution be imposed equally upon all property according to its value; that the word " assessments"

is used in the Constitution to represent the local burdens imposed by municipal corporations upon property bordering upon unimproved streets for the purpose of paying for the improvement, and laid with reference to the supposed benefit that the property receives by the improvement.

In that case it is further held by a majority of the court, that under the *general taxing power* in the Constitution named, the Legislature has no power to pass laws, authorizing towns or cities to improve streets, and make the owners of the adjoining property pay for it, either by a tax on the adjoining property or otherwise, and that where the improvements of the streets, &c., are authorized under the power to regulate the *assessments* of towns, cities, &c., and the cost thereof to be charged to and assessed against the adjoining property, no personal judgment can be rendered against the owner of such adjoining property, although the act of the Legislature authorizing the work to be done expressly provided that the judgment should be as well a personal one as a judgment against the property assessed with the cost of the work done. The learned Judge in delivering the opinion of the court says: " The judgment in this case follows the form prescribed by the practice act in actions for the foreclosure of mortgages; it determines the amount to be recovered, declares a lien upon the lot in question, and directs it to be sold and the proceeds of the sale to be applied to the payment of the amount recovered, and the surplus if any to be paid to the defendants. If there is a deficiency, the sheriff is directed, to report the amount, and the Clerk is directed to docket the same as a personal judgment against the defendant, drawing interest at the rate of ten per cent. per annum, to be collected by execution. This form of judgment is expressly authorized by the statute, &c., but we are of opinion, that the statute is unconstitutional so far as it affords relief beyond the fund to be realized by a sale of the property assessed. In Emery vs. Bradford, 29 Cal., 88, we held, that a personal judgment was authorized by the statute, but whether the statute was in that respect constitutional was

not considered. But be that as it may, it is clear that it was not decided. \* \* \* To say that the owner of land bordering upon an improved street can be made personally responsible for the payment of the improvement, is equivalent to saying, that his entire estate, real, personal, and mixed, whether bordering upon the street or remote from it, whether benefited or not, shall be held responsible for the tax.

Two of the judges dissented from the opinion of the court in that case, holding that a personal judgment was proper, but they conceded that all that could be collected on the judgment would be the value of the property against which the assessment was made and which was supposed to be benefited by the improvement. We are however, left uninformed as to how the sheriff or other officer, having the execution in charge issued on the personal judgment, would ascertain when he had collected from the defendant in the execution the exact *value* of the property, against which the assessment was made. The only practical way to ascertain this fact would be to authorize the sale of the property charged, and, if it did not bring the whole amount of the execution, to stop. This would be exactly the same thing in its results as to render a judgment against the property only. It is well settled by the decisions of this court, that assessments like those sued on are not regarded as a tax, but as an assessment for improvements, and are not considered as a burden, but as an equivalent or compensation for the enhanced value which the property derived from the improvement. Sheehan vs. The Good Samaritan Hospital, 50 Mo., 155, and cases cited. If it is considered, that the property receives a benefit from the improvement equivalent to the cost of the work done, why could it become necessary or proper to have a personal judgment against the owner of the property for the assessment, or why resort to other property to collect the amount. In the case of the City of Carondelet to the use &c., vs. Picot, 38 Mo., 125, the suit was brought to collect an assessment made against property belonging to Picot for street improvements made adjoining the property. The provisions of the law and ordinances

in force when the work was done, only authorized the assessment to be collected as other taxes were collected, no provision being made by which a suit for the recovery of the assessment could be brought. It was suggested in that case that a suit might be necessary in order to collect the assessment, as the property assessed might not be sufficient to pay the assessment. To this Judge Wagner, in delivering the opinion of the court, says: "The city makes out the apportionment, levies the assessment, and enforces the collection.

"The city has a lien on the property, the contractor has not. It may be said, that the property may not be sufficient to pay the assessment; it is a sufficient answer to this to say, that it will not be presumed, that it was ever intended that a corporation in the exercise of this high prerogative power should absorb the whole value of a person's property, and then come on him for the deficit."

The very idea of such an assumption on the part of either the City, or the State Legislature, would be sufficient to startle one who had even the most crude notion of the objects and purposes of a just or enlightened government. The idea that a City could improve a street, and assess the property, *benefited* thereby, and sell the entire property, and then go on the owner of the property, who may reside out of the City, and sell his property there to pay the balance of the assessment, and this all in consideration of the benefit conferred on his property, which was already sold, would seem at least in its results like taking the property of the owner and converting it to public use without any just compensation. I do not believe that by this indirection you can do that which is forbidden by the Constitution if directly done. If a personal judgment can be rendered in such case, all this may happen. It is true it is not likely to happen, but the fact, that it may possibly happen, is enough to condemn the law.

The case of Wells vs. The City of Weston, 22 Mo., 384, was a case in which the Legislature of the State had authorized the City of Weston by a provision in its charter to levy and collect a tax on all lands situate within one-half mile of the

city limits. Under this charter the City proceeded to levy a tax on the land of Wells, situate within one-half mile of the City Limits. The City Collector sold the land of Wells for the tax levied, the land was purchased by the City, and the collector threatened to make a deed to the City for the land. Wells filed a petition to set aside the sale made by the collector of his lands, so as to remove the cloud about to be placed upon the title to his land, on the ground that the Legislature had no power to pass the law to subject his lands outside the city limits to taxation by the city authorities. It was held by the court, that the act so far as it affected the lands of Wells outside of the city limits was unconstitutional and void. The act was not held void merely because it was prohibited by any express provision of the Constitution, but as well because "the very purpose of instituting government is the protection of the citizen in his person and property, and the power to violate these rights would seem to be quite beyond the lawful authority of any government," and because the Legislative department of the government could not arbitrarily take the property of one citizen and give it to another, and of course could not authorize others to do so. The Constitution prohibits the taking of private property for public use without just compensation.

It is submitted, that the principle decided in that case is in some respects identical with the principle involved in the case under consideration. If you can assess the lot of a non-resident of the city for improvements made in one of the streets in the vicinity of the lot, and sue the owner of the lot, get a personal judgment, sell the lot for less than the amount of the judgment, and collect the balance from the owner out of the other property without the city limits, you have in such case certainly taken his property and converted it to the use of the City, and if he has in such case received any just compensation within the meaning of the Constitution, it is difficult to perceive it. This would enable the City to do that by an indirection, which could not be done directly. If we construe the statute in reference to these as-

sessments to authorize a personal judgment, by which such results might follow, it would make the statute unconstitutional and void.    In a late case decided by this court the question, as to whether a personal judgment could be rendered under a statute almost exactly like the statute governing the case under consideration, was discussed, and the court held that no personal judgment could be rendered.    The learned judge, in delivering the opinion of the court in that case, overrules the cases of the City of St. Louis vs. Clemens, 36 Mo., 467, and the same case 49 Mo., 552, and says : " The construction given above is not only more reasonable, but I greatly doubt whether the Legislature has the power to authorize a general charge upon the owner of local property, which may be assessed for its special benefit, unless the owners of all taxable property within its municipality are equally charged." *    I think not only that the learned Judge's doubts were well founded, but I have no doubt, that if the statute is construed so as to authorize a personal judgment against the owner of the property in such case, so far as it attempts to authorize a personal judgment, it is unconstitutional and void.    It is objected by the appellant, that the judgment rendered in this case is made to bear interest at the rate of 15 per cent. per annum after its rendition.

This objection I think is well taken.   These assessments, upon which the suit is brought, are not contracts to pay interest at a higher rate than six per cent per annum within the meaning of our statute on that subject, (W. S., 783, §§ 2, 3,) but they are rather obligations imposed by law, and the interest of 15 per cent. authorized is more in the nature of a penalty than a contract, which is to be included by the jury in their verdict to the date of its rendition, but the judgment rendered therefor should only bear six per cent. interest.

The question as to whether the work done, for which the assessments were made, was done in or upon a public highway by prescription, is a question of fact which was fairly presented to the jury in the instructions given by the court un-

* Neenan v. Smith, 50 Mo. 530.

der the evidence in the cause, and is therefore not open for examination here.

It is also insisted by the appellant in this case, that the petition is wholly insufficient to uphold a judgment. It is not however necessary that we should examine any further points made, and argued in this case.

The petition, it may be remarked, would have been clearly bad on demurrer, but the defendant, filed an answer in which definite issues were made. In cases where the allegations of the petition are indefinite and want certainty, after verdict, with our liberal statute of amendments, the defects are, I think, cured.

Judge Wagner absent. The other Judges concurring, the judgment of the Circuit Court is reversed, and the cause remanded.