JOSEPH ZOELLER, Defendant in Error, v. SANDFORD B. KELLOGG, Plaintiff in Error.

June 12, 1877.

1. Where the value of the lots against which assessments for public improvements are made is less than the amount assessed upon them, the enhanced value of the lots is nothing to the owner, and the benefits to him derived from such improvements are no greater than to any other citizen whose property is not assessed; such an assessment is unconstitutional and void.

2. Where a municipal government makes an assessment for local improvements exceeding in amount the value of the property assessed, such an assessment is in violation of the constitutional inhibition against the taking of private property for public use without just compensation, and is void; and the fact that such power is referred to the taxing power, and not to the power of eminent domain, does not make its exercise any the less unconstitutional.

ERROR to St. Louis Circuit Court.

*Reversed and remanded.*

S. A. HOLMES, with S. KNOX, for plaintiff in error, cited : *Sheehan* v. *Good Samaritan Hospital,* 50 Mo. 155 ; *City of St. Louis* v. *Allen,* 53 Mo. 44 ; *Creighton* v. *Manson,* 27 Cal. 613 ; *McCormack* v. *Patchin,* 53 Mo. 33 ; *Carroll* v. *Eaton,* 2 Mo. App. 479 ; *Weber* v. *Sherzens,* 59 Mo. 389.

McGAFFEY & STEBER, for defendant in error, cited : 2 Dill. on Mun. Corp., secs. 589, 590, 617 ; *Seibert* v. *Allen,* 53 Mo. 44 ; *Egyptian Levee Co.* v. *Hardin,* 27 Mo. 495 ; *City of St. Louis* v. *Clemens,* 36 Mo. 467 ; *Palmyra* v. *Morton,* 25 Mo. 593.

LEWIS, P. J., delivered the opinion of the court.

In July, 1868, the defendant was owner of a lot of ground fronting seventy-nine feet on the north side of Chouteau Avenue and extending northwardly, with the same width, to Papin Street; also, of a lot opposite the same, fronting seventy-nine feet on the north side of Papin Street, and extending northwardly to an alley. Subsequently, Mercer Street was opened sixty feet in width, longitudinally, or from south to north, through defendant's two lots, leaving on the east side of each a strip eleven feet seven inches wide, and on the west side of each a strip seven feet five inches wide. In August, 1873, the three special tax bills here sued on were issued and certified, charging these narrow strips of ground on either side of Mercer Street with expenses of curbing, guttering, macadamizing, and cross-walks, to the aggregate sum of $1,488.16. Plaintiff obtained judgment for $1,642.55, as a charge against the lots, and defendant brings the cause here by writ of error. There was testimony tending to prove that the lots, after the works charged for were completed, and with all enhancements of value from that cause, were worth not more than $1,025. The court, at the instance of plaintiff, declared the law as follows:

" If the court, sitting as a jury, believe from the evidence that the work and materials charged for in the bills sued on were furnished, and that the work described in said bills was executed according to the contract, then the plaintiff is entitled to recover, without regard to the value of the land upon which the lien is sought in this suit."

The principles which authorize and control assessments upon the adjoining property for public improvements have long been a subject of discussion in the courts. Some contrariety of opinion may yet be found in their various modes of application, but the fundamental doctrines are generally agreed upon.

A power which compels a man to pay for work and ma-

terials which he has neither asked for nor consented to receive, or else to surrender part of his property to another, seems so repugnant to all ideas of that personal protection which is the chief end of civil government that we must be able to refer it to some distinct basis of constitutional authority. It cannot stand upon the power of taxation ; for it lacks, in all cases, the essential characteristics of equality and uniformity. To tax one man alone for a specific item in the public outlay would be, in principle, no better than to tax him for all the expenses of the municipal government. The only constitutional basis upon which the assumed power can rest at all is the right of taking private property for the public use, upon just compensation being made therefor.

Our Supreme Court has repeatedly said that the local assessment for improvements " is not considered as a burden, but as an equivalent or compensation for the enhanced value which the property derives from the improvement." *Lockwood* v. *City of St. Louis,* 24 Mo. 20 ; *Sheehan* v. *The Good Samaritan Hospital,* 50 Mo. 155 ; *City of St. Louis* v. *Allen,* 53 Mo. 54. The converse of the proposition must be equally true ; so that the enhanced value which the property derives from the improvement is, practically, the compensation which the owner gets for the assessment against it. This assessment, to be enforced as a lien which may subject the property to a sale and transfer from the owner, is, in effect, a taking of the property. " The requirement of a just compensation to be made for private property taken for public use " * * * " applies as well where the value or a part of the value of the property is taken by being subjected to the payment of a sum of money, as where the property itself, or some interest therein, is directly taken for public use." *Creighton* v. *Manson,* 27 Cal. 627. This brings us to the question whether, if the instruction given in the present case was correct, the defendant was thus left secure in his constitutional right of " just

compensation " for the property so devoted to the public use.

The real value of the lots being less than the amount assessed upon them, the whole property would necessarily be absorbed for satisfaction of the lien.

The owner, as a member of the community, would derive a certain benefit from the improvements, in common with all other citizens. But this being simply his right, independently of the transfer, would not be compensation in any sense. *Newby* v. *Platte County*, 25 Mo. 258. The enhanced value of the property would be nothing to him, since it must all pass into other hands. His private property is thus literally taken for a public use, without just compensation or any compensation at all.

An instruction which thus makes possible a palpable violation of constitutional right is necessarily erroneous. It may follow, with literal exactness, the terms of legislative authority conveyed in the City Charter. But the Legislature can confer no power which is constitutionally forbidden to every department of civil authority.

Constitutional guaranties must be paramount, not merely in their form, but in substance. Courts cannot sustain them otherwise than by looking to the ultimate effect and operation of an enactment, or other measure, as well as to the shape of its presentation.

We are of opinion that no just compensation is made, within the requirement of the Constitution, when private property is taken without any benefit to the owner; and that an assessment upon property for public improvements to an amount exceeding the value of the property is unconstitutional and void, by whatever agency imposed. Whether an assessment could be made, either with or without additional legislation, which would reach the property in the rear of defendant's; or whether the assessment already made is divisible, so that a part might be recovered without an infringement of constitutional right, we are not

now called upon to determine. The judgment must be reversed and the cause remanded. All the judges concur.

Lewis, P. J., delivered the opinion of the court upon a rehearing.

Upon a second hearing of this cause, the defendant in error insists that the municipal authority to make assessments for local improvements is in no wise referrible to the right of eminent domain, but inheres in the taxing power alone. From this he argues that the constitutional guaranty against the taking of private property for public purposes without just compensation is not infringed when such an assessment exceeds in amount the value of the property assessed, so that the owner must needs be deprived of his property, as well as of the special benefits which, in theory, are supposed to afford a remuneration for the assessment. If he thus loses all, and gets absolutely nothing in return, this is held, nevertheless, to be a constitutional exercise of the taxing power.

It may be admitted that most of the authorities cited refer the authority under consideration to the taxing power, and deny that its origin is in eminent domain. But, in considering a question of constitutional protection, the nominal source of an assumed power is of far less moment than the effects of its exercise. The power of taxation is inferred from the general grant of legislative authority. But, like all general grants, it must yield whenever found in conflict with any special restriction. The restriction requiring just compensation when one's property is taken for public purposes is usually applicable, in practice, to the power of eminent domain. If, however, in a peculiar state of facts, it shall be found directly hostile to a certain exercise of the taxing power, or of any other power, the restriction will be supreme, and the power must so far be surrendered.

The argument of counsel admits a distinction between the power to impose taxes for general purposes and the power

to make assessments upon property to defray the expenses of local improvements. The distinction is really so broad that our Supreme Court has said: "The whole theory of local taxation or assessments is that the improvements for which they are levied afford a remuneration in the way of benefits. A law which would attempt to make one person, or a given number of persons, under the guise of local assessments, pay a general revenue for the public at large, would not be an exercise of the taxing power, but an act of confiscation." *McCormack* v. *Patchin*, 53 Mo. 36.

It is thus seen that while special remuneration has no concern with taxation for general purposes, it is inseparable from the theory which sanctions assessments for local improvements. If the special "remuneration in the way of benefits" be eliminated, then the improvements are exclusively in the interest of the general public, and the money raised to pay for them is, in effect, a section of the "general revenue for the public at large," levied "under the guise of local assessments." This is, literally, "confiscation," which is merely a mode forbidden, like every other, of taking private property for public purposes, without just compensation to the owner. If, in the present case, the defendant's entire property is to be subjected to the claim asserted for the plaintiff, then he will unquestionably be giving up his substance to the uses of the public, and to its revenues, also, with no shadow of that "remuneration in the way of benefits" on which the right of local assessments depends.

Constrained by this consideration of the constitutional guaranty, we can only adhere to the opinion formerly delivered in this case. It is gratifying to reflect that the vital question involved is one which secures the right of appeal to a tribunal whose wisdom will correct any erroneous views herein admitted, and whose determination will be final. The judgment is again reversed and the cause remanded. Judge Bakewell concurs; Judge Hayden, not having heard the former argument, gives no opinion.