Farrar *et al.*, *Appellants*, v. The City of St. Louis *et al.*

**Constitution**: LOCAL ASSESSMENTS. The power to pave the streets of the city of St. Louis, and to charge the costs of such improvements against the adjoining property, conferred by section 26, article 3, and section 18, article 6 of its charter, and the mode of its exercise prescribed by ordinance No. 12,041 of said city, are not in conflict with the provisions of the constitution of the State.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Glover & Shepley, John Wickham* and *J. L. and F. P. Blair* for appellants.

The action was properly brought in the name of the appellants, as tax-payers of the city of St. Louis. *Matthis v. Cameron*, 62 Mo. 504; *State v. Saline Co.*, 51 Mo. 350; *Newmeyer v. Railroad Co.*, 51 Mo. 81. The city ordinance No. 12,041, attempts to collect a special tax for the improvement of Washington avenue from Fifth to Twelfth street, by dividing the entire cost of the work by linear front feet, and requiring each adjoining lot owner to pay accordingly; said ordinance is unconstitutional and void. Charter of St. Louis, § 18, art. 6; Cooley Con. Lim., (5 Ed.) top p. 629; Cooley Tax., p. 451; Burroughs Tax., p. 470; *Warren v. Henley*, 31 Iowa 31. The courts have never held the front foot rule, so called, to be a rule, nor have they admitted the legislature omnipotent. Burroughs on Tax., p. 61; *Woodbridge v. Detroit*, 8 Mich. 274; *City v. Donohue*, 31 Mo. 345; *Weber v. Schergens*, 59 Mo. 389; *Halpin v. Campbell*, 71 Mo. 493. The special tax proposed by ordinance 12,041 is unconstitutional and void, because not uniform. Cons. of 1875, art. 10, §§ 1, 3, 4, 6, 7, 10; City Charter 1876, art. 6; *St. Joseph v. O'Donohue*, 31 Mo. 345; *Livinton v. Albany*, 41 Ga. 21; Burroughs on Tax., p. 62. Ordinance 12,041 is illegal and void, because it exempts from the oper-

ation of the special tax a large part of the property liable to its burden. *City of New Haven v. Fair Haven, etc., R. R. Co.*, 38 Conn. 422 ; *Gas Co. v. Thurber*, 2 R. I. 15. Said ordinance is illegal in taxing owners of adjoining lots for improving that part of the avenue in possession of the railroads. City Charter, art. 10, § 5 ; 2 Dillon Munic. Corp., (3 Ed.) § 761 ; *Street R. R. Co.'s Appeal*, 32 Cal. 491. The ordinance is illegal in taxing lot owners with cost of crosswalks. City Charter, art. 6, § 18 ; *Blunt v. Janesville*, 31 Wis. 648. The special tax proposed by the ordinance is void, because in excess of constitutional limit. Cons., art. 10, §§ 11, 8. The ordinance is illegal, being in violation of section 15, article 6 of the city charter, and because it establishes no constitutional improvement district. Cons., art. 5, §§ 9, 10 ; *State, etc., v. St. Louis*, 1 Mo. App. 503 ; *Cummings v. Bank*, 101 U. S. 153. The contract of the city with W. R. Allen is void, because it contains a clause authorizing the street commissioners to alter its terms. City Charter, art. 6, §§ 15, 27, 28 ; *Kiley v. Oppenheimer*, 55 Mo. 374. The ordinance is void, because it is in conflict with the provisions of section 18, chapter 6 of the City Charter. *Blunt v. City*, 31 Wis. 648 ; *Ruggles v. Collier*, 43 Mo. 353.

*George A. Madill* and *Leonard Wilcox* for W. R. Allen.

The power to tax is inherent in the State, and primarily is unlimited. No restriction upon such power will be presumed to be imposed by the constitution, unless such intention is expressed in clear and unambiguous terms. *County Ct. v. Griswold*, 58 Mo. 192 ; Dillon Munic. Corp., (3 Ed.) § 737 ; Cooley Cons. Lim., § 479 ; *Simmons v. State*, 12 Mo. 270 ; *Railroad Co. v. Maguire*, 20 Wall. 46, 62 ; *McCullough v. Maryland*, 4 Wheat. 431. The Supreme Court of this State has always recognized the validity of local assessments to pay for local improvements, and held that the general provisions of the various constitutions of the State limiting and regulating the mode of taxation, were not in-

tended to reach them. *Lockwood v. St. Louis*, 24 Mo. 20; *Newby v. Platte Co.*, 25 Mo. 269; *Garret v. St. Louis*, 25 Mo. 413; *Palmyra v. Morton*, 25 Mo. 595; *Egyptian Lever Co. v. Hardin*, 27 Mo. 496; *St. Louis v. Clements*, 36 Mo. 471; *Uhrig v. St. Louis*, 44 Mo. 463; *State v. St. Louis*, 62 Mo. 245; *St. Louis v. Speck*, 67 Mo. 406; *Adams v. Lindell*, 72 Mo. 198; *St. Louis v. Spigel*, 75 Mo. 146. The power granted the city of St. Louis to pave, is a continuing one. *McCormack v. Patchen*, 53 Mo. 36; *Hoffman v. St. Louis*, 15 Mo. 654. The power conferred on the city to pave at the cost of the adjoining property, carries with it the power to adopt any reasonable mode of apportionment. Cooley Cons. Lim., (5 Ed.) p. 233; Dillon Munic. Corp., (3 Ed.) §§ 94, 739, 741; *Page v. St. Louis*, 20 Mo. 142; *Am. Union, etc. v. St. Joseph*, 66 Mo. 680. The frontage assessment was legal. Cooley Cons. Lim., 629; Cooley on Tax., p. 451; *Fowler v. St. Joseph*, 37 Mo. 228; *St. Joseph v. Anthony*, 30 Mo. 228; *Neenan v. Smith*, 50 Mo. 528; *Adams v. Lindell*, 72 Mo. 198. The mode of the exercise of the power to make the street improvements, prescribed by ordinance No. 12,041, was otherwise constitutional and valid.

NORTON, J.—Section 26, article 3 of the charter of the city of St. Louis, (R. S., p. 1585,) provides that the mayor and assembly shall have power within the city, by ordinance, to establish, open, vacate, alter, widen, extend, pave or otherwise improve * * all streets and avenues * * and provide for the payment of the costs and expenses thereof in the manner provided in the charter. It is also provided by section 18, article 6, Revised Statutes, page 1608, that the cost of constructing such improvements in the city shall be apportioned as follows: "The grading of new streets, alleys and the making of crosswalks and repairs of all streets and highways and cleaning of the same, and alleys and crosswalks, shall be paid out of the general revenue of the city; and the paving, curbing, guttering, sidewalks and the materials for the roadways, the

repairs of all alleys and sidewalks, shall be charged on the adjoining property as a special tax and paid and collected as hereinafter provided, and whenever the estimated special taxes to be assessed against any property shall in the aggregate amount to more than 25 per cent of the assessed value of said property, calculating a depth to such property of 150 feet, then the assembly shall provide out of the general revenue fund for the payment of the amount in excess of said 25 per cent."

In pursuance of the power conferred by the charter provisions the following ordinance was adopted by the mayor and assembly.

[12,041]

"An ordinance to reconstruct Washington avenue, from Fifth street to Twelfth street."

"Be it ordained by the municipal assembly of the City of St. Louis, as follows:

"Section 1. The board of public improvements is hereby authorized and directed to cause Washington avenue, from Fifth street to Twelfth street, to be reconstructed by taking up and removing the old pavement, preparing the road-bed, renewing and re-adjusting the curbing, paving the roadways with granite blocks laid on a concrete foundation, and making all proper connections and intersections with other streets and alleys.

"Section 2. The foundation shall be a bed of hydraulic cement concrete; the paving blocks shall be granite, laid on a bed of sand, and the curbing shall be limestone.

"Section 3. The old pavement shall be removed and the road-bed properly formed to a depth of fourteen inches below the intended surface of the roadway. On the road-bed a foundation of hydraulic cement concrete six inches deep shall be laid; on this foundation there shall be placed a pavement of granite blocks set on edge on a bed of clean, coarse sand. The blocks shall then be covered with fine, hot gravel and raked until the joints are completely filled. There shall then be poured into the joints of the pavement

a paving cement of proper consistency until they are filled flush with the surface. All broken or defective curbstones shall be removed and replaced with new ones, and such as can be used again shall be re-adjusted. They shall have a straight and even face on the side toward the gutter, and shall have close joints at least eleven inches in depth below top of earth.

"Section 4. The cost of the foregoing work and all proper connections and intersections required shall be charged as a lien upon the adjoining property fronting or bordering on the improvement herein provided for, and shall be paid by the owners thereof. When said work is completed, the president of the board of public improvements shall compute the cost thereof respectively in the proportion that the linear feet of each lot fronting or bordering on said improvement bears to the total number of linear feet of all the property chargeable with the special tax aforesaid and shall make out and certify to the comptroller, on behalf of the contractor, bills of such cost and assessment accordingly as required by law."

"Approved May 10, 1882."

That on the foot of said ordinance is the following entry.

OFFICE OF THE BOARD OF PUBLIC IMPROVEMENTS, }
St. Louis, April 14, 1882. }

"The board of public improvements estimate the cost of the entire work to be done at the expense of the property-owners at $42,840.

Attest:                          HENRY FLAD, president.
EMORY S. FOSTER, Secretary."

The plaintiffs, who are the owners of a lot of ground fronting thirty-two and one-half feet on Washington avenue on the line of the improvement authorized by the ordinance, with a depth of seventy-one feet along the west line of Ninth street, instituted this proceeding to enjoin the city and the contractor from executing the work of recon-

structing Washington avenue. They allege substantially in their petition as the grounds for appealing to the restraining and injunction powers of the court the following:

1.    That the ordinance and contract are beyond the powers of the city and are illegal and void.

2.    That Washington avenue has heretofore been improved; that the city at large is interested in its improvement; that the ordinance makes no provision for ascertaining the benefits to the public from the improvement thereof; but assesses the whole cost thereof equally upon each linear foot fronting on said avenue between Fifth and Twelfth streets.

3.    That said ordinance includes the cost of cross_walks on Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh streets, whereas under section 18, of article 6 of the charter, the same should be paid out of the general revenue of the city; and further, that the cost of paving squares formed by the intersecting streets crossing Washington avenue is charged against the property abutting on said avenue.

4.    That the work required to be done and the materials to be furnished by said ordinance, constitute nothing but repairs of Washington avenue, and the same should be paid out of the general revenue of the city.

5.    That the ordinance is invalid because no ordinance has been passed for the construction of cross-walks between Fifth and Twelfth streets on Washington avenue.

6.    That the ordinance is illegal, because it does not provide for imposing a part of the cost of the work on the railroad companies occupying Washington avenue be between the points named.

7.    That the ordinance is illegal and void, because it violates article 10 of the constitution of Missouri.

8.    That the ordinance is illegal, because it directs the levy and collection of a special tax for a street improvement in an unconstitutional manner, and exempts from taxation property which ought to have been included within

the improvement district for the improvement of Washington avenue from Fifth street to Twelfth street.

9.  That the ordinance is invalid, because it undertakes to levy an unequal or non-uniform tax on property within the territorial limits of St. Louis.

10.  That the ordinance is illegal and unconstitutional, because under it plaintiffs are compelled to pay on their property worth $13,000, the same amount as is charged other property, having the same frontage, worth $100,000.

11.  That the ordinance is illegal and void, because it exempts from taxation property not exempted by the constitution, in this, that the property before mentioned worth $100,000 is taxed no more than plaintiff's property worth $13,000; hence, $87,000 in value of the first mentioned property escapes taxation.

To this petition the city interposed a demurrer, which the circuit court sustained, and plaintiffs declining to plead further, judgment was rendered for the defendants, which, on plaintiffs' appeal to the St. Louis court of appeals, was affirmed, and from this judgment of affirmance plaintiffs have prosecuted their appeal to this court.

The various grounds relied upon by plaintiffs for relief, as stated in the petition and above set forth, raise this question: Is it within the power of the city, under its charter and the constitution of the State, to reconstruct its streets and charge or assess the cost thereof against the property adjoining or fronting upon the improvements in the proportion that the linear feet front of each lot bears to the total number of linear feet of all the lots abutting on the street? An affirmative answer to this question affirms and a negative answer reverses the judgment.

The power to pave the streets of the city and to charge the cost of such improvements against the property adjoining such improvement, is directly conferred by section 26, article 2, and section 18, article 6, above referred to in this opinion, and the ordinance which plaintiffs assail passed in pursuance of that power, must be held to be valid, unless

25—80

it be made clearly to appear that the power conferred and the mode of its exercise is in violation of some constitutional requirement or restriction. It is claimed by counsel for plaintiffs, in an ingenious and able argument, that said charter provisions, as well as the ordinance, are in violation of sections 1, 3, 4, 6, 7 and 11 of article 10 of the constitution on revenue and taxation. The sections are as follows:

Section 1. The taxing power may be exercised by the general assembly for State purposes, and by counties and other municipal corporations, under authority granted to them by the general assembly, for county and other purposes.

Section 3. Taxes may be levied and collected for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and all taxes shall be levied and collected by general laws.

Section 4. All property subject to taxation shall be taxed in proportion to its value.

Section 6 provides that certain property therein specified shall be exempt from taxation, and section 7 provides that all laws exempting property from taxation other than the property specified in section 6, shall be void. So much of section 11 as is relied on to sustain the point made by plaintiffs, is as follows:

"Taxes for county, city, town and school purposes, may be levied on all subjects and objects of taxation. For city and town purposes the annual rate on property in cities and towns having 30,000 inhabitants, or more, shall not, in the aggregate, exceed one hundred cents on the $100 valuation.   *   *   Said restrictions, as to rates, shall apply to taxes of every kind and description, whether general or special, except taxes to pay valid indebtedness now existing or bonds which may be issued in renewal of such indebtedness."

If, as contended for by plaintiffs' counsel, that the "taxes" and "taxation" referred to in the above sections,

embrace, and were intended to embrace, special assessments made to pay for local improvements, then it would follow that the said charter provisions of the city, as well the ordinance No. 12,041, the validity of which is questioned in this suit, would fall because of conflict with the constitution. But we are of the opinion that charges for the cost of a local improvement against the property benefited by the improvement, although an exercise of the taxing power, are not such taxes as are referred to in the various clauses of the constitution above quoted, and that they are neither embraced, nor intended to be embraced in them. Said article 10 of the constitution is devoted to "revenue and taxation," and the taxation there provided for and restricted relates to such taxation as is intended to raise revenue to be paid into the respective treasuries of the State, county or municipality, and to be disbursed therefrom for State, county or municipal purposes. At the time the constitution of 1875 was being framed, the validity of special assessments for the payment of the cost of local improvements had been sustained in numerous rulings of this court, the principle underlying these adjudications being that the property benefited by a local improvement was increased in value as much as it is required to pay for the improvement. These rulings were made under the constitutions of 1820 and 1865, both of which contained the same provision that is contained in said section 4 of the present constitution, viz.: "That all property subject to taxation, shall be taxed in proportion to its value." The point now under discussion being the pivotal one in the case, we deem it not inappropriate to refer to some of the cases bearing upon it.

In the case of *Lockwood v. City of St. Louis*, 24 Mo. 20, where, notwithstanding by the law then existing, church property was expressly exempted from State and county taxation, and where, by the charter of the city, the authority of the city to levy and collect taxes was confined and limited "to property made taxable by law," it was held that a special assessment against church property for its

proportion of the cost of constructing a sewer was justifiable, and that it was not a tax in the meaning of the law exempting church property from taxation for general purposes. It was observed in that case " that these special assessments are found in the English law, and have prevailed in most if not all the states, * * and their validity cannot be questioned under our constitution. Their intrinsic justice strikes every one. If an improvement is to be made, the benefit of which is local, it is but just that the property benefited should bear the burden. While the few ought not to be taxed for the benefit of the whole, the whole ought not to be taxed for the benefit of the few." The case from 11 Johns. 77, in the matter of the Mayor of New York, is approvingly quoted, where, for improving Nassau street, several churches were included in the street assessment, and they claimed to be exempt from its operation, under the provisions of the state law, that "no real estate belonging to any church shall be taxed by any law of this state." The court held that this referred to general taxes to be assessed for the benefit of the town, county or state at large, that to pay for the opening of a street in proportion to the benefit derived from it, was no burden, and, therefore, no tax within the meaning of the law.

In the case of *Newby v. Platte Co.*, 25 Mo. 269, where the constitutionality of the road law, which provides that in determining the just compensation to which the owner of property appropriated to public use is entitled under the constitution, the benefits and advantages accruing to such owner in respect to the residue of his property unappropriated in consequence of the use to which the part taken is applied shall be taken into consideration was drawn in question. Judge Leonard in an elaborate opinion in discussing the question of special assessments for local improvements observed "that the property is assessed in respect to the benefit derived from the improvement; it is a tax on the benefits rather than a tax on the property and therefore not obnoxious to the constitutional requirement

that all property subject to taxation shall be taxed accord-
ing to its value. There is a marked difference between
general taxation and special asssessments for local objects
and the word tax may be used in a contract or statute so as
not to embrace within its meaning local or special taxes,
although both kinds of taxation derive their authority from
the general taxing power."

So in the case of *Garrett v. City of St. Louis*, 25 Mo.
505, where, in speaking of assessments for benefits, it is
said : " The tax in question is not such a property-tax as
is within the meaning of that provision of the constitution
requiring all property to be taxed according to its value.
The tax is local, for local purposes and is a tax on benefits
and not directly on property. The cost of the public ben-
efit is made a public burden, and the expense of the indi-
vidual benefit is placed upon the shoulders of the persons
who receive it."

So in the case of the *Egyptian Levee Company v. Har-
din*, 27 Mo. 495, where it was insisted that a provision of
the charter which authorized the corporation to construct
levees and dig canals, for the purpose of reclaiming from
liability to overflow a district of country between the Des
Moines, Fox and Mississippi rivers in Clark county, and
which also authorized the fund necessary for such improve-
ments to be raised by a tax not to exceed fifty cents per
acre upon the landholders in the district embraced within
the charter was obnoxious to the constitutional require-
ments that all property should be taxed according to its
value, it was held " that the said provision of the constitu-
tion is applicable only to taxation in its usual ordinary, and
received sense, to taxation for general, state, county, city and
town purposes, not to local assessments where the money
raised is expended on the property taxed." In the case of
the *City of St. Joseph v. Anthony*, 30 Mo. 537, the consti-
tutionality of a charter provision authorizing the city to
macadamize streets within its limits, and to apportion
and charge the cost thereof on the adjoining lots in pro-

portion to their front.feet was upheld.   Now, if, as is held in the above cases the words taxation and taxes as used in section 4 of the constitution were not intended to apply, and in fact did not apply to local or special assessments for local improvements, but relate only to general taxation for state, county, city and town purposes, we are justified, in the absence of any express or necessarily implied provision to the contrary, in concluding that the same words used in other sections as well as the restriction contained in section 11, as to annual rates of taxation, refer not to special assessments for local improvements but only to general or special taxation having for its object the raising of revenue to go into the respective state, county, city or town treasuries for disbursement therefrom for state, county, city or town purposes.

It was well known to the members of the convention who framed the constitution of 1875, that according to the rulings of this court the words " taxes " and " taxation " as used in sections of the constitutions of 1820 and 1865, identical with said section 4, did not embrace special assessments or taxes imposed to pay for local improvements for benefits thereby conferred on the property assessed or taxed ; and if they intended to change the rule of interpretation in this respect, and embrace special assessments in the restrictions contained in said section 11, apt words expressive of such intention and accomplishing such object would doubtless have been used.   No such words were used, nor are they necessarily implied from the expression contained in said section, that " said restriction as to rates shall apply to taxes of every kind and description," for in the case of *Sheehan v. The Good Samaritan Hospital*, 50 Mo. 155, where, by statute, the property of the hospital was expressly " exempt from taxation of every kind," it was held that the property was liable to a special assessment against it for the improvement of a street on its front, notwithstanding by statute it was exempt from taxation of " every kind," the court holding " that the taxation from

which it was exempted was for the ordinary taxes for the purpose of revenue, and that the tax-bill sued on is not regarded as a tax, but as an assessment for improvements, and is not considered a burden, but as an equivalent or compensation for the enhanced value which the property derives from the improvement."

In the case of *Adams v. Lindell*, 72 Mo. 198, this court approved the opinion of the St. Louis court of appeals in the same case, reported in 5 Mo. App., 197, where it was held that the provisions of the constitution. of 1875 relating to uniformity and equality of taxation, as well as the restrictions contained in said section 11, were not intended to apply to and did not effect any change in the law as to the right of municipal corporations to make special assessments for local improvements.

In case of *City of St. Louis v. Spiegel*, 75 Mo., 145, it was held that said section 3, which provides that taxes shall be uniform throughout the territorial limits of the authority imposing the tax, did not apply to a tax on property. But conceding, for the argument, that the section as to uniformity of taxes applies to special assessments, we can not see that the rule prescribed has been broken in the case before us, inasmuch as all the property adjoining the improvements is not only assessed, but each front foot thereof is assessed alike.

It is insisted that the improvement of Washington avenue authorized by the ordinance only constitutes repairs, and that under the charter the cost for repairs cannot be charged against the adjoining property, but must be paid out of the general revenue fund of the city. We are of the opinion that the work to be performed under ordinance cannot be said to be repairs. It provides for the reconstructing Washington avenue, not by repairing it, but by taking up and removing the old pavement, preparing the road bed, removing and re-adjusting the curbing, paving the roadway with granite laid on a concrete foundation, and making all proper connections and intersections with other streets.

The old pavement is to be taken up and removed and a new and different one to be put down. The power conferred upon the city to "pave and otherwise improve its streets" is a continuing one, and it was said in the case of *McCormack v. Patchin*, 53 Mo. 36, where the construction of the above words was invoked, that "the power to grade and improve streets is a legislative power, and is a continuing one unless there is some special restraint imposed in the charter of the corporation. It may be exercised from time to time as the wants of the corporation may require, and of the necessity and expediency of its exercise the governing body of the corporation and not the courts, is the judge. * * The power to compel property-owners to pave generally extends to the compelling them to repave when required by the municipal authorities." An inspection of the ordinance shows that the objection urged that it includes the costs of crosswalks is not well taken. Crosswalks are not mentioned in the ordinance and the phrase contained in it, "all proper connections and intersections with other streets" does not necessarily include crosswalks. The objection made, that the cost of paving the connections and intersections with cross streets cannot be charged against the lots, is answered by the case of *Powell v. City of St. Joseph*, 31 Mo. 347, where it was held that under the statute which authorized the city of St. Joseph to assess the cost of macadamizing, paving and repairing streets to the owners of adjoining property in proportion to their front on the streets, the cost of paving, etc., of the crossings should be assessed to the property owners of the adjoining blocks in proportion to their front.

It is also insisted that the ordinance is invalid because it does not impose a part of the cost of reconstruction on the railroad companies occupying with their tracks a part of Washington avenue. It is averred in the petition that the railroad companies operating roads on said avenue, are required by section 5, article 10 of the city charter, and by section 4, article 4 of the revised ordinances, whenever a

street is reconstructed, to reconstruct in like manner and with the same material, as the company is bound, by its charter, and the charter and ordinance of the city, to maintain. We have no doubt that under the charter of the railway company, (Laws 1864, p. 486,) and the charter and ordinance of the city, that the railway company is liable for the cost of reconstructing so much of Washington avenue as is included between the rails of the company's tracks. *St. Louis v. Railroad Co.*, 50 Mo. 94. We do not, however, think it was necessary, to the validity of the ordinance, that the liability of the company should have been specified in it, inasmuch as its liability was fixed in another ordinance of the city of equal force with ordinance 12,041, and it is to be presumed that the officers charged with the execution of these ordinances would observe the requirements of both. But if in performing these duties the law is not observed, and the cost of the improvement between the rails of the company's tracks is assessed against the property fronting on the avenue, the most that could be said of it is, that the tax-bill would only be invalid to that extent, and that it would still be valid to the extent of the true amount for which the lot is liable. *Neenen v. Smith*, 60 Mo. 292; *Bank v. Arnoldia*, 63 Mo. 229.

It is also insisted that the requirement in the ordinance that the cost of reconstruction shall be assessed against the adjoining lots according to their frontage is invalid and operates unequally and unjustly. Having shown that the charter of the city confers upon it the power to pave and reconstruct its streets, and to assess the cost of the work on the adjoining property, without binding it to any method of apportioning the cost, but leaving the municipal authorities free to adopt any method not forbidden by the constitution or general laws of the State, it follows that they might adopt any method in apportioning the cost which the legislature could adopt. *American Union Express Co. v. St. Joseph*, 66 Mo. 680, 681. Dillon on Municipal Corporations, section 752, lays down the rule thus : "The courts

are very generally agreed that the authority to require the property specially benefited to bear the expense of local improvements, is a branch of the taxing power, or included within it, and the many cases which have been decided, fully establish the general proposition that a charter or statute authorizing the municipal authorities to open or establish streets, or to make local improvements of the character above mentioned, and to assess the expense upon the property which, in the opinion of the designated tribunal or officers, shall be specifically benefitted by the improvement in proportion to the amount of such benefit, or upon the abutters in proportion to benefits, or frontage or. superficial contents, is, in the absence of some constitutional restriction, a valid exercise of the taxing power."

The method adopted in the ordinance of charging the cost of reconstructing Washington avenue against the adjoining lots, according to their frontage, has been repeatedly authorized by the legislature of the State by express statute, and such enactments have been upheld and received the sanction of the court in the following cases: *Palmyra v. Morton*, 25 Mo. 594; *St. Joseph v. Anthony*, 30 Mo. 538; *Fowler v. St. Joseph*, 37 Mo. 228; *Powell v. St. Joseph*, 31 Mo. 347; *City of St. Joseph v. O'Donoghue*, 31 Mo. 345; *St. Louis v. Clemens*, 49 Mo. 554; *Neencn v. Smith*, 50 Mo. 528; *Kiley v. Cranor*, 51 Mo. 541; *Weber v. Schergens*, 59 Mo. 390; *St. Louis v. Allen*, 53 Mo. 44. The liability of lots fronting on a street, the paving of which is authorized to be charged with the cost of the work according to their frontage, having been thus so repeatedly asserted, the question is no longer an open one in this State, and we are relieved from the necessity of examining authorities cited by counsel for plaintiff, condemning what is familiarly known as the "front foot rule." While irregularities arising in the enforcement of the rule in consequence of irregularities in the situation and depth of lots, may afford a reason for an appeal to the legislative power of the State for their

rectification, they would not justify the courts in invading the domain of the legislature.

In the case of the *Egyptian Levee Co. v. Hardin, supra,* where the legislature authorized an assessment of fifty cents per acre on all land embraced within a certain district, to pay the cost of leveeing and ditching to prevent overflow, it was claimed that the rule laid down worked unequally and unjustly, inasmuch as some of the land in the district was worth $75 per acre, and other land only $20. It was observed, in disposing of the point made, "that in every form of taxation, whether local or general, it is desirable that the burden should be distributed, as near as may be, in proportion to the benefit derived. * * But where there is an absence of constitutional provisions, it is not in the power of the courts to enforce any fancied scheme of equality seeming to them more just than the one adopted by the legislature. The latter department of the government is wisely intrusted with the entire control of this subject, and if practical injustice is done, the remedy is with the people." The same principle is announced in the case of *Garrett v. City of St. Louis,* 25 Mo. 505, where the question of assessments for benefits was involved, and it was said "the question is not whether individual instances of injustice may not occur. It is not whether the tax will produce perfect equality of burdens, nor whether the power * * may not be abused. We know too well that under any system of taxation these things may and do happen. They are evils not within the power of the courts to remedy. It is for the legislature to guard against them." The case of *City of St. Joseph v. O Donoghue, supra,* is to the same effect.

It follows from what has been said, that the question stated in the beginning of this opinion must be answered in the affirmative, and this necessarily leads to an affirmation of the judgment of the court of appeals, and it is hereby affirmed, with the concurrence of all the judges.