W. R. ALLEN, Respondent, v. F. H. KRENNING, Appellant.

St. Louis Court of Appeals, December 7, 1886.

| 23a 561 |
| 33a 205 |
| 23 561 |
| 131m 25 |

| 23 | 561 |
| 97 | ³410 |
| 97 | ²411 |

1. SPECIAL TAXES. — The assessment of special taxes on property benefitted by street improvement is an exercise of the taxing power.

2. —— LIMITATIONS. — The provision of the charter of the city of St. Louis, limiting assessments for special taxes to twenty-five per cent. of the assessed value of the property, is in the nature of a tax exemption, and must be strictly construed.

3. —— This limitation refers to each distinct improvement, and not to the aggregate of all street improvement, which may be chargeable against the property.

4. —— INTERSECTING STREETS. — A lot at the intersection of two

Vol. xxiii—36

streets may be assessed to an amount not to exceed twenty-five per cent. of its assessed value, for the improvement of each street, though the improvements are of the same character, and made at substantially the same time.

Appeal from the St. Louis Circuit Court, Shepard Barclay, Judge.

*Affirmed.*

Kehr & Tittmann, for the appellant: The cost of improvement can be assessed upon the property only to the extent that it is specially benefitted. 2 Dill. Mun. Corp. [3 Ed.] 756, 759; *Neenan v. Smith*, 50 Mo. 525; *Newby v. Platte Co.*, 25 Mo. 271; *Garret v. St. Louis*, 25 Mo. 511; *Zoeller v. Kellogg*, 4 Mo. App. 153. The reconstruction of both Seventh street and Clark avenue is part of one general plan of street reconstruction. The ordinances and the work were practically cotemporaneous. The aggregate cost of both improvements adjoining the appellant's property exceeds twenty-five per cent. of the assessed value of the property, and, therefore, the tax bill representing the excess is void. City Charter, art. 6, sect. 18, 2 Rev. Stat. 1608; 2 Dill. Mun. Corp. [3 Ed.] sect. 751, sub. 3, pp. 756, 759; *Zoeller v. Kellogg*, 4 Mo. App. 163; *Matter of Walter*, 75 N. Y. 354–59.

Leonard Wilcox, for the respondent: The assessment of benefits for local improvements is a branch of the taxing power, and hence is a legislative, not a judicial, act; and it would be a valid exercise of this power were the whole cost of such improvements imposed on the adjoining property. *Farrar v. St. Louis*, 80 Mo. 387; *Wright v. St. Louis*, 44 Mo. 463; *Simmons v. The State*, 12 Mo. 270; Dill. Mun. Corp. [3 Ed.] section 737; *Adams v. Lindell*, 72 Mo. 199; 5 Mo. App. 198; Burroughs on Taxation, 381; Cooley on Const. Lim. [5 Ed.] p. 593, sect. 479; *Neenan v. Smith*, 50 Mo. 529. The freeholders did not intend, by the limitation on sec-

tion 18, of article 6, of the charter, that, when property had been once assessed for local improvements to the extent of twenty-five per cent. of the assessed value, it should forever thereafter be exempt from assessment for benefits conferred by other improvements. *Lexington v. Aull*, 30 Mo. 487; *McCormack v. Patchen*, 53 Mo. 33. Exemptions from taxation are to be strictly construed, and any doubt must be resolved in favor of the taxing authority. *Railroad v. Alexandria*, 17 Gratt. [Va.] 184; *St. Louis v. Ins. Co.*, 47 Mo. 156; *Baltimore v. Grand Lodge*, 17 C. L. J. 259.

ROMBAUER, J., delivered the opinion of the court.

This cause involves the construction of the limitation contained in section 18, article 6, of the charter of the city of St. Louis. The language of the section, so far as the same is involved in the present controversy, is as follows:

"The cost of  *  *  *  improvements within the city shall be apportioned as follows:  *  *  *  The paving, curbing, guttering, sidewalks, and the materials for the roadways, the repairs of alleys and sidewalks shall be charged on the adjoining property as a special tax, and collected and paid as herein provided. Whenever the estimated special taxes to be assessed against any property shall, in the aggregate, amount to more than twenty-five per cent. of the assessed value of said property, calculating a depth to such property of one hundred and fifty feet, then the assembly shall provide out of the general revenue for the payment of the amount, in excess of said twenty-five per cent. The Board of Public Improvements shall notify the Assembly whenever an ordinance is pending which requires an appropriation out of the general revenue to pay a part of the cost of the improvements therein contemplated."

This suit is on a special tax bill for the reconstruction of part of Seventh street, and the question raised is

fully presented by a certain affirmative defence set up in a very carefully drawn answer, the substance of. which is as follows : '

The defendant admits that he is the owner of the premises sought to be charged, said premises being lot 10 and part of lot 11, of block 186, of said city, having a front of seventy-one feet, six inches, on the west line ·of Seventh street, by a depth westwardly along Clark avenue of óne hundred and twenty-seven feet, six inches, to an alley ; bounded east by Seventh street ; south by Clark avenue ; west by said alley, and north by other property in said block ; and he admits, as in the petition alleged, that the city is, and on the several days and dates stated was, a municipal corporation, and that sec₋ tion 18, of article 6, of its charter, is correctly set forth in the petition ; and the defendant says he is advised that the same constitutes the city's sole warrant or authority for assessing the cost of an improvement upon the adjoining property.

The answer further charges that, in the year 1881, the city, under its said charter powers, entered upon a general system of street reconstruction, the object of which was to remove the then existing pavement in the roadway of streets, and to repave such roadway with granite blocks, or other paving materials, and that, pursuant to such plan of street reconstruction, the city, on March 8, 1882, passed ordinance number 11,936, set out in the petition, for the reconstruction of Seventh street, from Cerre street to Market street, and on June 5, 1882, passed ordinance number 12,131, for the reconstruction of Clark avenue, from Seventh street to Twelfth street, and that the defendant's premises adjoin, front, and border both of said streets. The Clark avenue ordinance provides, in its fifth section, that, whereas the estimated cost of the work to be assessed against some of the lots, fronting or bordering on the proposed improvement, amounts to more than twenty-five per cent. of their assessed value, the excess shall be paid by the city, and an

amount is set apart for that purpose, which was subse-
quently increased by amendatory ordinance number 12,-
240.

The answer further charges that, shortly after ordi-
nance number 12,131 took effect, the city of St. Louis
entered into contract with the plaintiff, Allen, by which
the latter undertook to reconstruct Clark avenue from
Seventh street to Twelfth street ; that he performed his
contract, and that, upon the completion of the work, the
president of the board of public improvements computed
the cost thereof, and levied and assessed the same, as a
special tax, against each lot of ground chargeable there-
with ; and that upon such computation it appeared that
the amount chargeable against the defendant's premises
was $1,903.38 ; that the assessed value of the defendant's
said property was $6,470 ; that twenty-five per cent.
thereof is $1,617.50, which amount the president of said
board levied and assessed against the defendant's prem-
ises, and issued and delivered to the plaintiff, Allen, a
special tax bill for the same, dated the fifth day of No-
vember, 1883, and that the excess of $285.88 was paid by
the city ; that said special tax bill became a lien on the
defendant's said premises on the fifth day of November,
1883 ; that the plaintiff, Allen, demanded payment of
said special tax bill, and that the defendant, in May,
1884, paid him the full amount thereof, with interest.
The answer further charges that, at or about the time of
the reconstruction of Clark avenue, as aforesaid, or
shortly thereafter, the plaintiff, Allen, reconstructed
Seventh street, from Cerre street to Market street, under
the ordinance and contract recited in the petition ; that
upon the completion of the work the president of the
board of public improvements computed the cost thereof
and assessed the sum of $815.13 as the portion of such
cost chargeable to the defendant's aforesaid property,
fronting or bordering on said improvement ; that at the
time said improvement was made, as well as at the time
of said computation, the assessed value of the defend-

ant's property was $5,760, and that, notwithstanding the fact that the defendant's property was already charged with, and then subject to, a valid special tax for twenty-five per cent. of its assessed value for the reconstruction of Clark avenue, the president of said board levied and assessed the further sum of $815.13 against said property for the reconstruction of Seventh street, and on the twelfth day of April, 1884, issued and delivered to the plaintiff, Allen, for the same, the special tax bill recited in the petition.

The answer further charges that the aggregate amount of said two special tax bills is $2,718.51, and, therefore, more than forty-two per cent. of the highest assessed value of the defendant's premises, and $1,101.01 in excess of the maximum which may rightfully be assessed against his premises for street reconstruction, under the charter of the city.

The answer further alleges that the defendant is advised that, by reason of the facts aforesaid, the special tax bill recited in the petition was levied without authority of law, and in violation of the charter of the city of St. Louis, and that said tax bill is, therefore, void ; and the defendant prays judgment accordingly, and that said tax bill be cancelled.

The plaintiff, Allen, demurred to all that part of the defendant's answer, which follows the general denial of the plaintiff's cause of action, for the following reasons :

1. The part demurred to states no fact constituting a defence to the plaintiff's cause of action.

2. The part demurred to states no facts entitling the defendant to the relief prayed for, or to any other relief.

3. The facts stated by the defendant show that the tax sued for was a separate and independent assessment, in no way connected with the assessment first mentioned in said answer.

The court sustained the demurrer, to which the de-

fendant then and there excepted, and declined to plead further. And the cause coming on for trial, the plaintiff, against the defendant's objection, offered and read in evidence the special tax bill sued on, and rested.

The defendant thereupon offered to prove each and every fact alleged in the new matter or affirmative allegations of his answer, to which proof and every part of it the plaintiff objected; and the court sustained the objection, and refused to receive said evidence, or any part of it, on the ground that said facts do not constitute a defence to said special tax bill, to which action of the court, in sustaining said objection and excluding said evidence, the defendant then and there duly excepted.

The court rendered judgment for the plaintiff, and on the same day the defendant filed his motion for new trial, which being overruled he appealed.

The defendant now assigns for error that the circuit court erred :

1. In sustaining the demurrer to the answer.

2. In excluding the evidence offered by the defendant at the trial.

3. In admitting the tax bill against the defendant's objection.

4. In rendering judgment for the plaintiff, when, upon the facts and the law, the judgment should have been for the defendant.

Whether these errors are well assigned or not, depends upon the proper answer which is to be given to this question.

In determining the limitation of twenty-five per cent. contained in section 18, of article 6, of the charter, must all special taxes heretofore assessed against the property for street construction be taken into consideration, or all special taxes assessed for the construction done under one continuous plan of improvement, or only the special taxes under the provisions of one ordinance?

Unless there is some latent ambiguity in the language containing the limitation, that question must be

decided by the ordinary meaning of the words employed.
In case there is such ambiguity, other provisions of the
charter, and the state of the law prior to its enactment,
may be examined in solving the ambiguity.

The only ambiguity arises by reason of the fact that
the word, taxes, is used in the plural, and that the limi-
tation applies to their aggregate, and hence the defend-
ant contends that the limitation contemplated more than
one tax, and that the twenty-five per cent. limit is
reached when all the taxes thus assessed, in the aggre-
gate, exceed twenty-five per centum, or, at least, when
all the taxes assessed under one continuous plan of im-
provement, in the aggregate, exceed twenty-five per
centum.

On the other hand, the plaintiff contends that such
construction is at war, not only with the sense of the
words employed, but with other provisions of the charter.
That the limitation refers to estimated taxes to be as-
sessed, and thus their aggregate inferentially excludes
taxes heretofore assessed ; and that, while the charter
does not, in express words, require that the improvement
of each street shall be provided for by separate ordi-
nance, it clearly so contemplates, as from the construc-
tion of each street a separate and independent benefit is
supposed to arise to the property fronting thereon.

When the present city charter was adopted, there
was no limitation, either by legislative provision, or ju-
dicial construction, on the city's power in levying these
special taxes. The courts had uniformly decided that
the city's power, under former charters, to improve its
streets and charge the cost of the improvement on the ad-
joining property, was a continuing power. That this
power might be exercised from time to time, as the wants
of the municipal corporation might require, and that, of
the necessity or expediency of its exercise, the govern-
ing body of the corporation was the sole judge. *McCor-
mack v. Patchin*, 53 Mo. 33. It is true that the theory
upon which the constitutional validity of such taxes was

upheld was one of a corresponding special benefit result-
ing to the property from the improvement (*Neenan v.
Smith*, 50 Mo. 525), but since the property owner could
never be heard to say that his property had not, in fact,
been benefitted, in opposition to the legislative declara-
tion that it had, the theory of assessment was one which
he could never practically controvert. *Seibert v. Tif-
fany*, 8 Mo. App. 33.

An instance of seeming departure from the law, as
above stated, is found in *Zoeller v. Kellogg* (4 Mo. App.
163), where the court held that the assessment of a spe-
cial tax, in excess of the entire value of the lot, was
equivalent to confiscation, and could not be upheld on
the theory of a special benefit to the lot; but it
will be noticed that the court arrived at that result by
treating the assessment as being in the nature of an ex-
ercise of the right of eminent domain, and not as an
exercise of the taxing power, a holding which, in view
of subsequent decisions of the supreme court, is not ten-
able. *Farrar v. City of St. Louis*, 80 Mo. 379, 394; 2
Dill. Mun. Corp., sect. 752. We thus find the law prior
to the adoption of the present charter, as conferring up-
on the city a power in levying these special taxes, prac-
tically unlimited by anything but the discretion of the
governing body of the corporation. The limitation is in
the nature of a restriction of a pre-existing power, and
so far as the property owner is concerned, an exemption
from taxation, and as such to be construed strictly. As-
suming that the clause could, with equal reason, be con-
strued to mean, either what the plaintiff claims, or what
the defendant claims it does mean (and that is the best
that can be said for the defendant's claim), and it results
that the plaintiff's construction must prevail, because as
to him, representing the municipality, the clause is a re-
striction of a pre-existing power, but as to the defendant
it is the grant of a new exemption.

The defendant further claims that the paving of the
two streets was but one improvement. He contends that

the answer distinctly states that, in the year 1881, the city, under its charter power, entered upon a general system of street reconstruction, and that the two ordinances in question were passed pursuant to such plan of reconstruction, and that this allegation in the answer is admitted to be true by the demurrer.

Aside from the fact that the demurrer only admits facts which are well pleaded, and that the defendant failed to plead any ordinance evidencing such general plan of reconstruction, it is apparent that the plea is defective. The question is, not whether the reconstruction of the two streets was part of the same general plan, but whether, in fact, the reconstruction of both streets constituted but one improvement.

The defendant maintains that the reconstruction of both streets constituted but one improvement, and refers us to the case of *Matter of Walter* (75 N. Y. 354), as sustaining that view.

The question in that case arose under the following provision : "Commissioners or assessors, for making estimates and assessments for any improvements authorized by law to be assessed upon the owners or occupants of houses and lots, or improved or unimproved lands, shall in no case assess any house, lot, improved or unimproved lands, more than one-half the value of such house, lot, improved or unimproved lands, as valued by the assessors of the ward in which the same shall be situate." *Matter of Schell*, 76 N. Y. 433. The estimates for improvements included the regulating, grading, setting of curb and gutter stones, and flagging Manhattan street, and the paving of Manhattan street, under two different resolutions of the Board of Common Council, one approved April, 1871, and the other May, 1872. The whole work, however, was done under one resolution of the department of public parks, which resolution, as the court found, was the acknowledged source of authority for the work. Two assessments were made, one for each class of work, neither amounting in itself to one-half of

the assessed value of the property, but both together amounting to more than one-half.

Upon this showing the lower court refused to relieve the petitioner, and dismissed his petition. The court of appeals reversed this ruling, and in its opinion, delivered by Judge Folger, said: "We are unable to conclude, from the record before us, that the work, for which these two assessments were laid, was necessarily two distinct improvements, and that it was not one improvement. If one improvement, then there should have been but one assessment; and if but one assessment, it could not have exceeded the half assessed value of the lots; and as it has exceeded that, it is, in some extent, at least, illegal. It was laid without power to do so, and in direct violation of statutory restriction and prohibition, and there is substantial error in it, not to say fraud."

It will be noticed, however, that the entire improvement in that case was done on one street, and under one resolution of the department of public parks, and that it was the lapse of time alone, intervening between the orders for the two classes of work, by which it was claimed the two classes of work constituted separate improvements. The court, in its opinion, conceded that, "If the paving of a street is so disconnected from other work on a street in necessity and effect, as to be a different improvement from grading, regulating, setting of curb and gutter stones, and flagging, or if the adoption of a peculiar kind of pavement is so, then there may be said to have been two classes of improvements upon the street," but it denied that such was the case shown by the record before it.

There is nothing, therefore, in that case which would justify us to hold in this, that the paving of the two streets, under the circumstances stated in the answer, constituted but one improvement.

It is to be deplored that, on a question of so much importance to property holders as the one under consideration, the framers of the charter neglected to employ

language free from all ambiguity. The assessment of street improvements exclusively on the adjoining property may be erroneous in principle, and may work in certain cases, as it unquestionably has done in this, great hardship to the adjoining owner. The remedy for the evil must be sought in a change of the charter provision by the people, and not by an attempt on the part of the courts to work out an equity by judicial declarations, which are opposed to recognized rules of construction.

All the judges concurring, the judgment is affirmed.